CHARLOTTE McCONNELL, Plaintiff in Error, *vs.* ROSA LEE BROWN *et al.* Defendants in Error.

*Opinion filed February 20, 1908.*

1. EQUITY—*chancellor's finding that grantor had sufficient mental capacity will be upheld unless clearly erroneous.* A finding by the chancellor, from conflicting oral testimony, that a person alleged to be an imbecile had sufficient mental capacity to render his marriage valid and to sustain deeds and mortgages subsequently made by him and his wife will be upheld on appeal, unless clearly erroneous.

2. UNDUE INFLUENCE—*when a deed should not be set aside for undue influence.* The promise of marriage by an intended wife, and her act in joining in an ante-nuptial contract providing that the intended husband's property shall be deeded to her, raise no presumption of undue influence, and the deed should not be set aside upon the ground of undue influence where there is no evidence that either the contract or the deed was so procured.

WRIT OF ERROR to the Circuit Court of Hardin county; the Hon. E. E. NEWLIN, Judge, presiding.

On August 6, 1906, Charlotte McConnell, plaintiff in error, filed her bill, which was later amended, in the circuit court of Hardin county, against Rosa Lee Brown, Ceicel Gorden Brown, Sarah J. Brown, Elsie Brown, and others, for partition of 934 acres of land in that county owned by one Hugh Brown during his lifetime, and for other relief.

The bill as amended alleges that the said Hugh Brown died on July 10, 1906, intestate, seized in fee simple of all of the above mentioned real estate, leaving him surviving

as his only heirs-at-law, Charlotte McConnell, his sister, and Rosa Lee Brown, Ceicel Gorden Brown and Sarah J. Brown, children and only heirs of George W. Brown, deceased, the only son of John Brown, a deceased brother of the said Hugh Brown; that said heirs are the owners in fee of all of said lands and are entitled to the possession thereof and to have the same partitioned among them. The bill further alleges that on July 19, 1900, there was a pretended marriage entered into between the said Hugh Brown, who was then about sixty-five years of age and who was at that time an imbecile and mentally incapable of understanding the nature of a marriage contract, and one Elsie Taylor, a girl who was then about eighteen years of age; that for a long time prior to said pretended marriage the said Elsie Taylor, knowing the mental condition of said Hugh Brown, conspired with one William D. Taylor, her father, to bring about the said pretended marriage for the sole and only purpose of securing control of and the title to the property of said Hugh Brown; that at the time of said pretended marriage the said Elsie Taylor compelled the said Hugh Brown to make and execute a pretended deed of conveyance to all of the above mentioned real estate for the pretended purpose of securing a marriage settlement for her, and that on November 27, 1901, the said Elsie Taylor and her father compelled the said Hugh Brown to execute and deliver to the said Elsie Taylor, by the name of Elsie Brown, another deed for said property, in which she also joined as grantor; that said marriage was never consummated by cohabitation and that Elsie Taylor ever after said marriage refused to cohabit with said Brown as his wife; that since the said pretended marriage the said Elsie Taylor has compelled the said Brown to join with her in the execution of two mortgages, for $500 each, on said property, and to join with her in the execution of certain deeds conveying to James H. Oxford, Charles Oxford, A. L. Edwards, W. D. Edmonson and J. M. Underwood parts of

232—22

said land; that the grantees in said deeds of conveyance knew that at the times of the making of said deeds, respectively, Hugh Brown was an imbecile and had been from his infancy, and was not mentally competent to transact ordinary business.

The bill makes the grantees in said deeds, Elsie Taylor, the heirs of George W. Brown, deceased, who are minors, and others, parties defendant and prays for partition; that the said pretended marriage between said Hugh Brown and Elsie Taylor may be declared null and void, and that the deed from Brown to Elsie Taylor dated July 19, 1900, and the deed from Brown and wife to Elsie Brown dated November 27, 1901, and the various deeds and mortgages from Brown and his wife affecting said lands, be set aside and declared null and void.

The answer of the adult defendants denies the material allegations of the bill and avers that there was a marriage in good faith between the said Hugh Brown and Elsie Taylor; that the marriage was sought by said Brown, and that both of the parties to said marriage contract were of fair mental condition and thoroughly understood the nature of said marriage contract; that there was a marriage settlement made between them by which the land in question was to be conveyed by warranty deed by said Brown to said Elsie Taylor, and that after said marriage, while living together as husband and wife, the said Brown of his own free will conveyed by warranty deed all of the said tracts of land to his wife; that such conveyance was voluntarily made by said Brown for the purpose of protecting his wife, and that no artifice or fraud or undue influence of any character was practiced on said Brown for the purpose of securing the title to said land. The answer admits the execution of the mortgages mentioned in the bill, but avers that they were made at the request of Hugh Brown for the purpose of raising money for his own use, and that one of said mortgages and a large part of the other has since been paid;

avers that the conveyances made by Brown and his wife to Oxford and others were made in good faith and for valuable considerations.   A replication was filed.

Upon a hearing before the chancellor in open court a decree was entered finding, among other things, that the deed executed by Hugh Brown to Elsie Taylor for the land in question on July 19, 1900, and the deed executed on November 27, 1901, by Hugh Brown and Elsie Brown to Elsie Brown for said premises, were obtained by the undue influence of the said Elsie Taylor and her father, William D. Taylor, exercised over and upon said Hugh Brown, and that they were without consideration and void; that the various other conveyances made by Elsie Brown and Hugh Brown, mentioned in the bill, were for valuable considerations, and that the grantee in each instance took the title to the land so conveyed to him in good faith and has a valid title in fee simple thereto.   The decree further finds that on July 19, 1900, the said Hugh Brown was mentally capable and competent to contract marriage, and that he was on that date lawfully married to the said Elsie Taylor; that he departed this life intestate on July 10, 1906, seized of all the land owned by him during his lifetime, except that conveyed to Oxford and others, heretofore mentioned, leaving no children or descendants thereof, but leaving Elsie Brown, his widow, and Charlotte McConnell, Rosa Lee Brown, Ceicel Gorden Brown and Sarah J. Brown as his only heirs-at-law.   It was ordered and decreed that the said deeds dated July 19, 1900, and November 27, 1901, be declared null and void and canceled by the circuit clerk of Hardin county; that the marriage entered into on July 19, 1900, between said Brown and Elsie Taylor be declared valid and binding, and that Elsie Brown was entitled to one-half of the lands of which the said Hugh Brown died seized, as his heir, and to homestead and dower in the other half of said premises as his widow; that Charlotte McConnell was entitled to one-fourth of the said premises, and that Rosa Lee

Brown, Ceicel Gorden Brown and Sarah J. Brown were each entitled to the one-twelfth part thereof, subject to the homestead and dower of said Elsie Brown. To review that decree Charlotte McConnell has sued out a writ of error from this court.

No deed dated July 19, 1900, is found in the record. The instrument referred to as of that date in both bill and decree was possibly the document dated July 17, 1900, which purports to be an ante-nuptial contract entered into by Hugh Brown and Elsie Taylor.

It is contended by plaintiff in error that the court erred in decreeing that the marriage between Hugh Brown and Elsie Taylor was valid and binding. Cross-errors have been assigned by Elsie Brown challenging the action of the court in setting aside the deed of July 19, 1900, and the deed of November 27, 1901.

LEDBETTER & WATSON, and OXFORD & DENTON, (M. S. WHITLEY, of counsel,) for plaintiff in error.

H. ROBERT FOWLER, and RICHARD F. TAYLOR, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It was contended on the part of the complainant in the bill that Hugh Brown was an imbecile from birth, while the woman who asserts that she is his widow sought to show that while peculiar in many respects he was of average intelligence. More than ninety witnesses testified in the case, and a detailed discussion of their testimony within the limits of an opinion is not practicable. From a careful examination of the evidence it appears to us that Hugh Brown's intellect was weak and of low grade. He always went and came as he saw fit. In the part of Hardin county in which he resided with his father's family, during the years that he should have attended school, educational ad-

vantages were very meager. He went to school but a short time and his attendance seems to have availed him little or nothing. He never at any time acquired the ability to read and write and his knowledge of arithmetic was very slight. Some witnesses say he could not count above ten; others say he could not count above twenty; still others say he could not count above one hundred. He could not count money in any considerable amount, and seems at times to have had difficulty in distinguishing bills of one denomination from those of another denomination. In making such purchases as were necessary to supply his simple wants, however, he had no trouble in carrying out the transactions, and was able to make change and count money in small amounts without difficulty. His father, who died in 1875, left about three thousand acres of land and personal property valued at $20,000. The land was partitioned by proceedings in the circuit court. Charlotte McConnell, his sister, who is the sole complainant in this bill and is plaintiff in error here, was then an adult and was a party to that partition suit. In that suit no guardian *ad litem* was appointed for Hugh Brown, and his distributive share of the personal property was paid to him without any person being appointed by the court to represent or protect his interests. He never at any time had a conservator. He knew what property he owned and understood his rights with reference thereto. He recognized and acknowledged the rights of others. He learned to care for his own property and to transact such business as there was to do in reference thereto with intelligence, except that when money was to be paid to him it was necessary that he should have the assistance of some one to count it for him. This lengthy record discloses no instance in which he made an improvident contract or one that resulted in any substantial loss to him, and it is devoid of evidence showing, or tending to show, that he ever did or attempted a wrong against the property of another. He understood his own obligations

and complied therewith literally, and insisted that others with whom he had dealings should do the like.

The land set off in the partition suit was very largely timber land. Several hundred acres of this he had cleared and put in cultivation and in this way very materially improved his property. He was able to ascertain and remember the value of this property. He ordinarily rented his land for a share of the crops. He looked after the division of the crops himself, and was able to sell and dispose of the rents and of the timber upon his land without assistance, so far as the making of the contracts was concerned. He was a small, slight man, weighing one hundred and twenty pounds, and was feeble, physically, throughout his entire life. He sometimes assisted in manual labor on the farms for a short time but seems not to have been able to do much in that direction. After his father's death his mother assisted him in transacting his business so long as she lived. After her death he had the assistance of different persons at various times until 1894. At that time he had not had any fixed abode for several years, but boarded about the neighborhood in which his land lay and sometimes in a small town near by. In that year William D. Taylor became his tenant and Brown went to board with him. Thereafter Taylor assisted him in the management of his affairs and at times acted as his agent until the performance of the marriage ceremony, in 1900. Upon the happening of that event Hugh Brown established a home for himself and his wife, where they resided as husband and wife until his death and where she gave him the assistance in the management of his business that he found necessary. He possessed many eccentricities and peculiarities. He indulged in certain practices that were bestial, but which were not necessarily inconsistent with a higher type of intellect than that of the idiot. He dressed very poorly, was careless about his attire and his personal appearance and was filthy in his habits. He was a member of the church. He was sober and law-

abiding and detested drunkenness and lewdness. At church meetings he frequently led in prayer. A meeting was held by the christian people of the neighborhood in which he resided, during the civil war, for the purpose of offering prayers for the success of the Union armies. He attended that meeting and made a prayer which is said by a very intelligent witness who was present, to have been as able an effort as was heard at the meeting. He was careful of his money and was miserly in his disposition but was kind to the poor who resided in his vicinity. Prior to the performance of the marriage ceremony he would never consider the sale of any of his land, and when approached on the subject would say that he would cut his throat from ear to ear before he would dispose of any of it, and would invariably leave the company of the person who had made the proposition. After his marriage he and his wife sold and conveyed, for valuable considerations, about three hundred acres of the land. He was very ignorant, and could not converse intelligently for five minutes upon any current topic of the day. Within a few years after he went to board with Taylor he stated to a number of persons that he intended to marry Taylor's daughter, Elsie, and get them a place to stay. Following this, a proceeding to have a conservator appointed for him was instituted. That case seems to have been dismissed before a verdict was reached. Hugh Brown was very much incensed toward some of his relations on account of this proceeding, and thereafter announced that he would marry Elsie Taylor and give her all his property. A marriage ceremony was performed on July 19, 1900, by J. W. Riley, an ordained elder in the Church of Christ, uniting in marriage Hugh Brown and Elsie Taylor. Riley had known Brown for a number of years, and testified that at the time of the marriage his mental condition was good and there was nothing in his conduct or actions that would cause any one to think anything to the contrary. Brown was then sixty years of age

and Elsie Taylor was twenty-three. It is evident that their life together was not a happy one, which, considering the disparity in their ages, would not be surprising even had he been a man of higher intelligence. If the evidence of those who testified for the complainant be true,—and so far as this particular thing is concerned it preponderates,— Hugh Brown submitted to many indignities at the hands of his wife that a man of ordinary intelligence and spirit would not endure; but this we think is to be attributed to the fact that she was very evidently not a woman of refinement, and to Hugh Brown's weak condition, both of mind and body.

The chancellor possessed an advantage in determining the question of mentality which we do not enjoy. He saw and heard the witnesses, except a few whose evidence was taken by depositions, and in that way was better enabled to judge in whom to place credence. Under these circumstances it must clearly appear that there is a palpable error in the finding of the chancellor upon questions of fact before a reversal may be had. (*Dowie* v. *Driscoll,* 203 Ill. 480, and cases there cited.) The chancellor found that on July 19, 1900, Hugh Brown was mentally competent to contract marriage and that the marriage which he entered into with Elsie Taylor was valid and binding, and that all the conveyances attacked by the bill which were to others than Mrs. Brown were valid, and in this we do not think there was error. While the decree does not in express and specific words state the court's finding upon the question of Brown's mental capacity to dispose of and convey property, the finding in reference to the conveyances last referred to shows that the chancellor determined that Brown had sufficient mental capacity to enable him to dispose of and convey real estate. Plaintiff in error does not question that portion of the decree which finds conveyances to others than the wife to be valid. The decree, however, sets aside an instrument described therein as a deed from Hugh Brown to

Elsie Brown dated July 19, 1900, and the deed of November 27, 1901, on the ground that they were obtained by the undue influence of William D. Taylor and his daughter, Elsie. It does not appear from the abstract that there ever was any deed from Brown to his wife other than that of November 27, 1901. The reference to a deed of the earlier date may possibly have been intended to designate the antenuptial agreement entered into on July 17, 1900. In view of the condition of the proof, however, this apparent confusion is not of importance.

Elsie Brown by her assignment of cross-errors challenges the decree in so far as it sets aside the conveyance or conveyances made to her. The parties and the chancellor treated the bill as charging undue influence, and it will therefore be so regarded by us. We find, upon examination of the proof, that there is absolutely no evidence which indicates that either instrument executed by Hugh Brown was obtained by the exercise of undue influence. If the evidence heard on the part of the complainant stood alone it would not support the decree in this respect. No testimony was offered by either party showing the circumstances surrounding Hugh Brown at the time when he signed the ante-nuptial contract or at the time when he signed the deed of November 27, 1901, and, as we have above pointed out, there is no evidence whatever of the execution of any deed dated July 19, 1900. The contract bears date of July 17, 1900, which was two days before the marriage was solemnized. It is signed by Hugh Brown and Elsie Taylor, and recites that they are about to enter into marriage and that he is desirous of making a suitable and proper settlement to and for her use, and he covenants and agrees to and with her that he will, on or before the day of the marriage, by good and sufficient conveyance, settle and warrant to and upon her and her heirs the real estate owned by him, situated in the county of Hardin, in the State of Illinois. The instrument does not provide for the reservation of any

rights in the land to Hugh Brown. It was witnessed by John Jack and Clara Taylor. The deed of November 27, 1901, reserved a life estate to the husband, was acknowledged before John Jack, a notary public, and he and William D. Taylor signed as witnesses. Neither Clara Taylor nor John Jack was called as a witness. William D. Taylor was called for Mrs. Brown. Opposing counsel objected to his testimony on the ground that he was incompetent, for the reason that he was a party to the suit, and the court sustained this objection. No one testified to having been present at the time either of the instruments was executed or at any time when either was prepared, or when the execution or preparation of either was suggested or discussed with Hugh Brown or in his presence. It is not made to appear by this record that W. D. Taylor consented to the marriage or knew that the ante-nuptial agreement was to be executed. The only connection that he is shown to have with the execution of any deed is found in the fact that his name appears upon the deed of November 27, 1901, as a witness to the execution thereof. There is no evidence whatever to show that Mrs. Brown, either before or after her marriage, solicited or requested Hugh Brown to execute any conveyance to her or to execute the contract, or did anything to bring about the execution of any instrument beyond joining in the contract and accepting the deed when it was tendered to her. On the contrary, it is shown that in marrying her and conveying his property to her he did exactly as he had long intended to do.

Plaintiff in error's position is that the relations existing between Brown on the one side and his wife and her father on the other side were fiduciary in character; that they were the dominant parties and Brown the dependent party, and that the presumption therefore arises that the execution of the contract and the deed was obtained by undue influence. No such presumption obtains here, because it is not shown that either William D. Taylor or Mrs. Brown sought to

have Brown execute either of the instruments, or that they did anything for the purpose of bringing about the execution of either of the instruments by Brown, (*In re will of Barry*, 219 Ill. 391,) except that Mrs. Brown, or Elsie Taylor as she then was, agreed to marry Brown and joined with him in executing the contract, as she might lawfully do. Her promise to marry him and her act in joining in the ante-nuptial contract raise no presumption or inference that she exercised undue influence over him. The circuit court erred in setting aside the conveyance or conveyances to Mrs. Brown.

Plaintiff in error complains of the exclusion of certain evidence which she offered. It does not appear that this testimony would have been competent under the pleadings, and no error was committed in its rejection.

This case was hotly contested. The feeling of both parties and solicitors toward their opponents was unpleasant. Mr. Fowler, one of the solicitors for Mrs. Brown, testified in her behalf in reference to the mentality of Hugh Brown. His testimony is of the same general tenor as that of many others who testified for her. We cannot believe that it was regarded by the chancellor as of controlling importance. Our view as to the propriety of an attorney testifying in a suit in which he is employed we recently expressed in *Wilkinson* v. *People*, 226 Ill. 135, and *Bishop* v. *Hilliard*, 227 id. 382.

The decree of the circuit court, in so far as it sets aside and annuls the conveyance or conveyances to Elsie Brown and awards partition, will be reversed. In all other respects it will be affirmed. The cause will be remanded to the circuit court, with directions to dismiss the bill for want of equity in so far as it charges invalidity of the deed or deeds from Hugh Brown to Elsie Brown and seeks partition.

*Reversed in part and remanded, with directions.*