Ioana **DRAGANESCU** et al., Plaintiffs-
Appellants,

v.

**FIRST NATIONAL BANK OF HOLLY-
WOOD** et al., Defendants-
Appellees.

No. 74–2286

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 7, 1974.

Rehearing Denied Nov. 6, 1974.

John T. Carlon, Jr., Fort Lauderdale, Fla., Wm. E. Allison, St. Petersburg, Fla., John R. Vintilla, Cleveland, Ohio, for plaintiffs-appellants.

Jack F. Weins, Hollywood, Fla., for First Nat. Bank of Hollywood.

Merle Litman, Hollywood, Fla., for Schweikert.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

This diversity case began as a suit by the heirs of Mary Radu, all Romanian nationals and residents, against defendant-appellee First National Bank of Hollywood [the bank] for negligent failure to prepare a will. Plaintiffs-appellants allege that the decedent asked Victoria Vintilla to commission defendants-appellees to draw up a will. After Victoria's first visit to the bank, John R. Vintilla, her brother and an Ohio attorney who specializes in the representation of Romanian emigrees and nationals, called the bank. He appears to be the only person who spoke with the bank's lawyer regarding the exact terms and time requirements of the proposed will.

When Mary Radu died intestate, plaintiffs-appellants hired the same John Vintilla to represent them. Pursuant to Rules of the United States District Court for the Southern District of Florida Vintilla found local co-counsel, and then instituted this action. His fee was dependent on the outcome of the case. In a Pre-Trial Order, Appendix page 2, the district judge ruled that Vintilla could not represent plaintiffs

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

while appearing as a material witness for them. The judge therefore ordered Florida co-counsel to take responsibility for the suit. Plaintiffs ask us to reverse the court's order. We decline to do so.

■ Since only "final judgments" are appealable, 28 U.S.C. § 1291, this Court must first determine that the removal of counsel in the pre-trial order is "final." In Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, the Supreme Court said that a collateral order—one which did not terminate an action—was final and appealable when it finally determined claims separable from rights asserted in the main action, was too important to be denied review, and was too independent of the cause itself to require that the appeals court defer consideration until the whole case could be adjudicated. This Court has applied the *Cohen* rule to find orders on motions ·to disqualify counsel appealable.

As we said in [Tomlinson v. Poller, 5 Cir. 1955, 220 F.2d 308, 311] this is "a matter entirely disconnected with the principal contention of the taxpayers in the pending suit," and, "This order constitutes a final decision on that ancillary matter." Here, if the order was in error, the harm resulting therefrom is in the nature of the frustration of a public policy which cannot be avoided or mitigated by any appeal taken after the trial . . . is finally ended.

Tomlinson v. Florida Iron and Metal Inc., 5 Cir. 1961, 291 F.2d 333 at 334. *See also* Uniweld Products, Inc. v. Union Carbide Corp., 5 Cir. 1967, 385 F.2d 992, 994.[1]

The Florida law which guides us in evaluating the ruling of the trial court is contained in the Code of Professional Responsibility, 32 Fla.Stat.Ann. 127

(Supp.1974), adopted by the Florida Supreme Court in 1970. The provision falls under the Disciplinary Rules, about which the Florida Court says: "The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *Id.* at 130 (Supp.1974).

Disciplinary Rule DR 5–101(B) reads:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

Disciplinary Rule DR 5–102(A) provides:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if

---

1. In both *Uniweld* and *Florida Iron and Metal Inc.* we upheld the finality of the *denial* of a motion to disqualify counsel. In the present case, we pass on the finality of an order to disqualify. An order erroneously depriving a party of its chosen counsel during the course of the trial would also frustrate public policy in a way which a post-trial appeal could not mitigate.

any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

Although there has been little interpretation of the current provisions.[2] Florida courts have regularly applied the previous incarnation of these provisions.[3] Thus, in In re Estate of Freeman, Fla.Dist.Ct. of App., 3d Dist., 1970, 240 So.2d 656, the court reversed a trial judge who allowed a witness to the testamentary capacity of the deceased to continue as executor's counsel. In Dudley v. Wilson, 1943, 152 Fla. 752, 13 So. 2d 145, the Florida Supreme Court upheld the decision of the lower court to prevent plaintiff's counsel from testifying about the nature of the consideration for the conveyance of real property given the deceased party, for whom plaintiff was administrator. *See also* Millican v. Hunter, Fla.1954, 73 So.2d 58; Hubbard v. Hubbard, Fla.Dist.Ct. of App., 4th Dist., 1970, 233 So.2d 150.

Plaintiffs' claim that removal of their lawyer will work a substantial hardship and that, under exception (4) to 5–101(B), he should therefore be reinstated. They argue that Vintilla is uniquely qualified to represent them because he can speak the Romanian language, knew decedent for many years, and has great familiarity with the task of representing Romanians. Moreover, they insist, other lawyers are reluctant to take cases involving Romanians on a contingent fee basis.

We are not convinced of these claims and do not believe that Vintilla's removal will work a substantial hardship. His knowledge of the Romanian language will be of limited utility since he admits, "[T]he plaintiffs do not have any information to impart which will be of any value to you [a defendant's counsel]. All of the operative facts of our cause of action took place in Florida and the witnesses who shall establish them are in·the United States." Appendix at 18. In any case, the trial court's order does not bar Vintilla from acting as translator, should the need for a Romanian presence be established. The fact that Vintilla had known decedent for many years may make him a more credible witness on the nature of the will she is alleged to have commissioned, but it is not relevant to actions he would take in his lawyerly capacity. Plaintiffs fail to specify how Vintilla's familiarity with Romanians bears on the quality of the representation he can give. Finally, they do not demonstrate that the lack of such familiarity makes disinterested counsel unwilling to work on a contingent fee basis.[4]

2. In Beavers v. Conner, Fla.Dist.Ct. of App., 3d Dist., 1972, 258 So.2d 330, the court, guided by new provision DR 5–101(B), ruled that the trial court was not in error when it permitted a member of the law firm representing plaintiff to testify. However, the lawyer only testified to matters conceded by the defendant and therefore clearly fell within exception (1) of DR 5–101(B). Even so, the court noted:

> It certainly would appear that, in order not to jeopardize a client's cause of action, the better practice would be for counsel to arrange to have another conduct a trial proceeding when it is apparent that either he or a member of his firm will be required to testify on behalf of his client. Even though we have not found error in permitting the testimony in the instant case, each such situation will have to be scrutinized with utmost care whenever it arises and counsel should be very careful in testifying for a client while handling the trial.

258 So.2d 330 at 332.

3. Disciplinary Rules DR 5–101 and 5–102 replaced Code of Ethics, rule B, § 1, subd. 19, 32 F.S.A. 615 (1967), which read:

> *Appearance of Lawyer as Witness for his Client.*—When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.

4. Mr. Vintilla has noted in a letter to the district judge that local co-counsel desired to withdraw from the case once the judge had appointed the local attorney as counsel of

The only relevant exception to the Florida rule forbidding a material witness to act as counsel arises where a party would otherwise bear a substantial hardship. Plaintiffs have not demonstrated that removal of counsel in this case would work such a hardship. We therefore affirm the order of the court below.

Affirmed.

record. Appendix at 22. Of itself, this desire to withdraw by one local counsel does not show that plaintiffs cannot secure alternative counsel.

