J-A29016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARIANN N. ETTORRE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| F. DAVID ETTORRE, | |
| Appellee | No. 3703 EDA 2016 |

Appeal from the Decree October 25, 2016
in the Court of Common Pleas of Chester County
Civil Division at No.: 1515-1107

BEFORE: LAZARUS, J., PLATT, J.,[*] and STRASSBURGER, J.[*]

MEMORANDUM BY PLATT, J.:           **FILED APRIL 30, 2018**

Appellant, Mariann N. Ettorre,[1] appeals from the decree of October 25, 2016, which denied the petition *sur* appeal from probate in this will contest. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the orphans' court's opinion of February 23, 2017.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court takes judicial notice that Appellant died in 2017, post-argument. **See** Diocese of Orange, Catholic Cemeteries, http://www.occem.org/search-for-a-loved-one/location/?pid=802 (last visited Apr. 13, 2018). Counsel for Appellant has not filed a suggestion of death nor sought substitution of parties pursuant to 20 Pa.C.S.A. § 3372. This is of no present matter, because the substituting of Appellant's personal representative would not alter our disposition in this matter. **See also** Pa.R.A.P. 502(a).

This is a will contest regarding the February 8, 2013 [w]ill ("2013 [w]ill") of Frank J. Ettorre ("Mr. Ettorre")[,] who died on May 31, 2015. Mr. Ettorre was the father of three children, Francis David Ettore ("David"), Mariann Ettorre ([Appellant]), and Elaine Ettore Keno ("Ms. Keno"). The 2013 [w]ill left Mr. Ettorre's estate, less one dollar for each daughter, to David.

David, the executor of Mr. Ettorre's estate, offered the 2013 [w]ill for probate and was granted [l]etters [t]estamentary on June 15, 2015. On August 12, 2015, [Appellant] filed an [a]ppeal from [p]robate, ("[a]ppeal from [p]robate") and [p]etition for [c]itation [s]ur [a]ppeal from [p]robate ("Petition"). On August 18, 2015, Ms. Keno also filed an appeal from probate and a petition for citation for sur appeal from probate. [Appellant] and Ms. Keno's filings asserted that Mr. Ettorre lacked testamentary capacity and that the 2013 [w]ill was the result of fraud and undue influence.

Following a significant amount of preliminary matters and litigation, a court hearing was held on October 24, 2016 on the August[] 2015 appeals and petitions, as well as other filings.[2]

\* \* \*

In approximately January 2013, David contacted Thomas Wyler, Esquire ("Mr. Wyler") inquiring if Mr. Wyler would make a professional visit to Mr. Ettorre at Mr. Ettore's house. Mr. Wyler confirmed his willingness to meet at the residence and invited Mr. Ettore to telephone him. Soon thereafter, Mr. Ettorre telephoned Mr. Wyler, indicated that he wanted to do some estate planning and made an appointment with Mr. Wyler to discuss that topic with him.

Not long after his telephone conversation with Mr. Ettorre, Mr. Wyler traveled to Mr. Ettorre's house, located at 782 Hickory Lane, Berwyn, PA ("Mr. Ettorre's residence") to meet with him. Mr. Ettorre was friendly, pleasant and happy to see Mr. Wyler.

---

[2] The record reflects that Appellant did not appear at trial but her counsel appeared and called witnesses and presented evidence on her behalf. (*See* N.T. Trial, 10/24/16, at 15).

During this initial consultation, Mr. Wyler met privately with Mr. Ettorre, outside the presence of David, and discussed Mr. Wyler's preparation of a will for Mr. Ettorre. Mr. Ettorre stated that he wanted to provide for David, who had been living with him and caring for him, to make sure that David was able to obtain Mr. Ettorre's residence. Mr. Ettorre also spoke at length regarding his daughters, Ms. Keno and [Appellant].

In late January or early February 2013, Mr. Wyler mailed a draft of a will to Mr. Ettorre in accordance with his conference with him. Shortly thereafter, Mr. Ettorre arranged with Mr. Wyler to sign the will at Mr. Ettorre's residence.

On February 8, 2013, Mr. Wyler and Mr. Ettorre's dentist, Dennis Cerasoli ("Dr. Cerasoli"), visited with Mr. Ettorre at Mr. Ettorre's residence to witness Mr. Ettorre sign the 2013 Will.

On February 8, 2013, in Mr. Wyler and Dr. Cerasoli's presence, Mr. Ettorre discussed his desire to provide David with his estate. Mr. Ettorre understood that the natural object of his bounty consisted of his three children and knew the extent of his estate. Mr. Ettorre also described the reasons for his estrangement from his daughters, indicating that Ms. Keno was abusive toward him and that [Appellant] had wrongly obtained monies from him during a real estate transaction.

Just prior to the execution of the 2013 [w]ill, Mr. Wyler "videotaped" Mr. Ettorre, who confirmed during the recording that the terms of the will accurately stated his testamentary intentions.

Mr. Wyler credibly testified that in his opinion, having been the scrivener of hundreds of wills, the 2013 [w]ill accurately reflected how Mr. Ettorre desired to leave his estate. He further credibly opined that Mr. Ettorre was of sound mind, had testamentary capacity and was free of undue influence.

Dr. Cerasoli credibly testified that he had been Mr. Ettorre's dentist since approximately the late 1990s until the time of Mr. Ettorre's death in May of 2015 and always felt when he made house calls to see Mr. Ettorre during the time period of the will, 2012 and 2013, that he was mentally sharp.

Dr. Cerasoli credibly testified that there was nothing unusual about Mr. Ettorre's mental condition the day when the 2013 [w]ill

- 3 -

was signed. On that day, Mr. Ettore acted in the same manner that Dr. Cerasoli had observed him over the years.

Dr. Cerasoli also credibly testified that there was no indication at the time of the execution of the 2013 [w]ill that Mr. Ettorre was intoxicated or that anyone, including David, coerced, threatened or forced Mr. Ettorre to sign the 2013 [w]ill. Dr. Cerasoli had no doubt when he saw Mr. Ettorre on February 8, 2013 that Mr. Ettorre was able to decide what he wanted to do with his estate and who[m] he wanted to give it to.

Both David and Dr. Cerasoli offered credible testimony confirming the information that Mr. Ettorre had given Mr. Wyler regarding David's care of Mr. Ettorre. David had lived for many years with Mr. Ettorre at Mr. Ettorre's residence prior to the execution of the 2013 [w]ill and assisted Mr. Ettorre with his care. Dr. Cerasoli, who also lives with an elderly parent, observed David's relationship with Mr. Ettorre over the years and believed that David did a "fabulous job" caring for him.

Dr. Robert Preim, Mr. Ettorre's primary care physician for sixteen years prior to his death, credibly testified that during the time period between May of 2012 and February 8, 2013, he made a house call to Mr. Ettorre during which he performed a mini mental status exam of him. Mr. Ettorre's score was [thirty] out of [thirty], a perfect score. Dr. Preim also credibly testified that Mr. Ettorre was always very outgoing, well spoken, smart and had a good sense of humor. He further credibly stated that he and Mr. Ettorre had a good relationship and that he never had any concerns about Mr. Ettorre's mental capabilities and faculties.

Dr. Preim confirmed that Mr. Ettorre did not have a good relationship with his daughters and was grateful to David for being his primary caregiver.

Having viewed the recording of Mr. Ettorre taken on February 8, 2013, Dr. Preim credibly opined that the recording depicted Mr. Ettorre free from mental disability and that he appeared as mentally sharp as he typically did when Dr. Preim would see him over the years.

Dr. Preim further credibly testified that Mr. Ettorre was a very strong willed person who would not succumb easily to someone else's influences.

- 4 -

Approximately one week before Mr. Ettorre died, Mr. Wyler visited with Mr. Ettorre in the hospital outside the presence of David. Mr. Ettorre was grateful for Mr. Wyler's visit and described David as a good son. He requested of Mr. Wyler, that after Mr. Ettorre's death, to make sure that David pays the tax on Mr. Ettorre's residence so he could continue to live there.

On the day Mr. Ettorre died, May 31, 2015, Mr. Wyler spoke with Mr. Ettorre on the telephone while Mr. Ettorre was in the hospital. Mr. Ettorre said he wanted to make sure that David got Mr. Ettorre's residence. Mr. Ettorre seemed assured after Mr. Wyler confirmed that the 2013 [w]ill provided for that disposition.

(Orphans' Court Opinion, 2/23/17, at 1-5) (paragraph numeration, record citations, and footnotes omitted). The trial court also stated that:

. . . (o)n October 25, 2016, final orders were issued, including an order denying [Appellant's Petition].[3] On November 22, 2016, Ms. Keno filed an appeal[, which she subsequently discontinued,] to [this Court]. [On November 17, 2016, Appellant filed a motion for reconsideration, which the trial court did not act on prior to the filing of Appellant's notice of appeal.] On December 5, 2016, Ms. Ettorre filed an appeal from the court's October 2016 order denying her [petition].[4] On December 6, 2016, the [orphans'] court issued an order requiring [Appellant] to file a concise statement of errors complained of appeal. [*See* Pa.R.A.P. 1925(b).] On December 28, 2016, [Appellant] filed a five page statement of errors complained of on appeal[. *See id.* On February 3, 2017, the orphans' court issued an opinion] pursuant to the mandate of Pa.R.A.P. 1925(a) to explain the reasons for its rulings. [*See* Pa.R.A.P. 1925(a).]

(*Id.* at 1-2).

On appeal, Appellant raises the following questions for our review.

---

[3] Appellant did not file exceptions to the order.

[4] We note that despite being represented by counsel, Appellant filed her notice of appeal *pro se*. Counsel subsequently withdrew his appearance.

1. May an attorney who provided crucial trial testimony as to the mental capacity of the testator to make a will and undue influence and asked leading questions as to these issues on a video, act as trial counsel for the estate in a claim claiming lack of capacity and undue influence, where the video of the testator does not show the witnesses were present at the time he signed the will, or is the practice of a lawyer testifying on crucial issues in court on behalf of his client while he and his firm represent the client at trial "condemned," *In re Otto's Estate*, 349 Pa. 205, 36 A.2nd [sic] 797, 799-800 (1944)?

2. If he testifies, must he and his firm withdraw from the case, as this court ruled in *Com. v. Gibson*, 448 Pa. Super. 63, 670 A.2nd [sic] 680 (1996)?

3. Must his testimony be disregarded or must he be banned from testifying where the issues of his testimony go to the heart of the case, as this court ruled in *Com. v. Floyd*, 494 Pa. 537, 431 A.2nd [sic] 984 (1981), consistent with the national trend and rulings of the Supreme Courts of Delaware, *Matter of Estate of Waters*, 647 A.2nd 1091 (1994), Nebraska, *Kausgaard v. Endres*, 126 Neb. 129, 252 N.W. 810 (1934), Florida, *Hubbard v. Hubbard*, 233 So.2d 150 (Fla. 1970), Arkansas, *Rushton v. First National Bank of Magnolia*, 244 Ark. 503, 426 S.W.2d 378 (1968), Idaho, *Branon v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 502, 365 P.2d 958 (1961), Kansas, *Robbins v. Hannen*, 194 Kan. 596, 400 P.2d 733 (1965), Texas, *Cheatham v. Franke*, 298 S.W.2d 202 (Tex. 1957), Minnesota, *Schwartz v. Wenger*, 267 Minn. 40, 124 N.W.2d 489 (1963), Kentucky, *Garnett v. Walton*, 242 S.W.2d 107, 111 (Ky. 1951), Oregon, *Oxley v. Linnton Plywood Ass'n*., 205 Or. 78, 284 P.2d 766 (1955), Wisconsin, *In re Weinert's Estate*, 18 Wisc. 2d 33, 117 N.W.2d 685 (1962), Colorado, *Aquilini v. Chamblin*, 94 Colo. 367, 30 P.2d 325 (1934) and in Indiana, *Bohannan v. Bohannan*, 132 Ind. App. 504, 167 N.E.2d 717, 721 (1960)?

4. Where an attorney is disqualified, is his entire law firm disqualified, it being regarded as one lawyer, *U.S. v. Stansfield*, 874 F.Supp. 640 (M.D. 1998), and it is improper for the partner of Appellee's counsel to remain in the case, as the court ruled in *U.S. v. Clancey*, 276 F.2nd 617 (7th Cir. 1960), *rev'd on other grounds,* 365 U.S. 312 (1961)?

5. May a will be proven by one witness, counsel for the estate testifying at trial, who never testified at trial he saw the testator sign a will, and another who only stated he was in the same room but who never stated at trial he actually saw the testator sign the will, although affidavits state they saw him sign, where neither subscribing witness testified at trial they saw testator sign the will, a requirement for it to be sufficiently proven under **Wilson Will**, 364 Pa. 488 (1950), as the witnesses must have seen and testify at trial they saw the testator sign the will to prove a will, 20 Pa. C.S.A. §3132.1(a) & (b), as, in all cases on point, both witnesses testified they saw the testator sign the will, **In re Estate of Wilner**, 142 A.3rd 796, 801 (Pa. 2016), a will is proved by direct testimony either of two witnesses who saw the testator sign it or by [two] witnesses who are familiar with his signature and identify it, **Harrison's Estate**, 316 Pa. 15, 17, 173 A. 407 (1934), no case has held that admitting affidavits is enough, and if there are not two subscribing witnesses the signature of the testator must be proven by other evidence, **Ligo v. Dodson**, 301 Pa. 124, 151 A. 694 (1930), not shown here?

6. Did Appellee, if the testator had testamentary capacity but weak physically—wheelchair bound—and mentally as to be susceptible to undue influence, and a substantial part of his estate was left to one occupying a confidential relationship to him, who previously drafted another will leaving everything to himself, superseded by one signed by Decedent giving everything to his, three children, meet his burden to show no undue influence controlled the making of the will, and the court err in not using this standard, **Wilson Will**, 364 Pa. 488 (1950)?

(Appellant's Brief, at 6-9) (emphases omitted).

Appellant appeals from the decree of the orphans' court. Our scope and standard of review are settled.

> Our standard of review of the findings of an Orphans' Court is deferential.

>> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it

- 7 -

determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016), *appeal denied*, 145 A.3d 166 (Pa. 2016) (citations and quotation marks omitted).

Prior to reaching the merits of Appellant's claims, we must determine if they are properly before us. As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 431 (Pa. Super. 2009). Here, Appellant did not include any of the issues raised in this appeal in her Rule 1925(b) statement. (*See* Concise Statement of Errors Complained of on Appeal, 12/28/16, at unnumbered pages 1-5). Therefore, Appellant waived all her issues on appeal. *See Lord*, *supra* at 308; Pa.R.A.P. 1925(b)(4)(vii).

Moreover, even if Appellant had raised the issues in her Rule 1925(b) statement, we would not have addressed their merits. Appellant's four-page twenty-six issue Rule 1925(b) statement is not in compliance with Pennsylvania Rule of Appellate Procedure 1925(b)(4). *See Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004), *appeal denied*, 880 A.2d 1239 (Pa. 2005), *cert. denied*, 546 U.S. 1092 (2006) (waiving prolix Rule 1925(b) statement where court determined that "outrageous number of issues" was deliberate attempt to circumvent purpose of Rule 1925). Thus, even if Appellant had properly preserved her issues, the appeal would be subject to dismissal for this reason as well.

In any event, Appellant's claims are without merit. Appellant's first four issues all concern her contention that the trial court should have disqualified opposing counsel and his firm. (*See* Appellant's Brief, at 6-7). We will therefore address these issues together.[5]

With respect to the disqualification issue, Appellant argues: "testifying for a client yet remaining as counsel violates law." (Appellant's Brief, at 11). She further contends that, as in the instant matter, permitting another

---

[5] Appellant's argument does not match her statement of the questions involved, as she intermingles her first five issues and does not appear to address her sixth issue, contrary to our rules of appellate procedure. (*See* Appellant's Brief, at 11-28); *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nonetheless, to the extent we can determine her argument, we will address her issues. *See Donahue v. Fed. Express Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

attorney from counsel's firm to represent Appellee at trial was improper because the "law firm and attorney are one." (***Id.*** at 18). She also argues that the trial court erred in crediting counsel's testimony. (***See id.*** at 19). We disagree.

When reviewing a trial court's order on a motion for disqualification of counsel, we employ a plenary standard of review. ***See Weber v. Lancaster Newspapers, Inc.***, 878 A.2d 63, 80 (Pa. Super. 2005), *appeal denied*, 903 A.2d 539 (Pa. 2006). Further, "courts should not lightly interfere with the right to counsel of one's choice." ***Id.*** Thus, disqualification is appropriate "only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires." ***Id.*** (internal citation omitted). In addition, the court should prevent litigants from using motions to disqualify opposing counsel for tactical purposes. ***Hamilton v. Merrill Lynch***, 645 F.Supp. 60, 61 (E.D.Pa. 1986).[6]

After review of the record, we agree with the trial court, (***see*** Order, 10/05/16, at footnote 1), that the Rules of Professional Conduct permitted the substitution of alternate counsel from Attorney Wyler's firm when Attorney Wyler was likely to be called as a witness at trial.

---

[6] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." ***Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh***, 771 A.2d 39, 43 (Pa. Super. 2001).

Pennsylvania has adopted the advocate-witness rule provided by Pennsylvania Rule of Professional Conduct 3.7, which provides as follows:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1)  the testimony relates to an uncontested issue;
> >
> > (2)  the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3)  disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Pa. Rs. of Prof. Cond. Rule 3.7.  Rule of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client

represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

Pa. Rs. of Prof. Cond. Rule 1.7. Rule of Professional Conduct 1.9 states:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa. Rs. of Prof. Cond. Rule 1.9.

Here, Appellant all but ignores the existence of Rule 3.7. While she quotes it on the final page of her argument in this issue, she fails to discuss its application to this matter, let alone argue that the substitution of a different attorney from Attorney Wyler's firm violated either Rule 1.7 or Rule 1.9. (*See* Appellant's Brief, at 20-21). Instead Appellant relies on Pennsylvania case-law which predates the enactment of Rule 3.7, and, thus, is no longer controlling and/or cases from other jurisdictions interpreting their own states' rules and laws, which are irrelevant. (*See generally* Appellant's Brief, at 11-19).

The record reflects that Attorney Wyler was aware that he would be called as a witness and arranged for another lawyer for his firm to represent Appellee at trial. (*See* Order, 10/05/16, at footnote 1). This was the proper procedure as outlined under Rule 3.7(b). Appellant fails to explain why this was improper or in violation of the Rules of Professional Conduct. Accordingly, the trial court did not err in denying Appellant's motion for disqualification. *See* Pa. Rs. of Prof. Cond. Rule 3.7(b).

Appellant also argues that the trial court erred in crediting Attorney Wyler's testimony because he was not a competent witness. (*See* Appellant's Brief, at 19).[7] We have reviewed Appellant's undeveloped argument on this

---

[7] We note that it was Appellant, not Appellee, who called Attorney Wyler to testify in her case-in-chief. (*See* N.T. Trial, 10/24/16, at 15, 17, 46). Appellant did not make any objections to his testimony. It is settled that

issue. Appellant does not point to any relevant caselaw to support her argument. To the contrary, this Court has held that evidence given by an attorney can be critical to a case. In ***Commonwealth v. Gibson***, 670 A.2d 680 (Pa. Super. 1996), the appellant claimed that the trial court had erred in not allowing trial counsel to testify on his behalf regarding a prior inconsistent statement given by the sole witness against him. ***See Gibson***, ***supra*** at 681-82. On appeal, our Court stated that, while frowned upon, an attorney could act both as an advocate and a witness. ***See id.*** at 683. We further noted that the trial court could have permitted trial counsel to withdraw at that point and have co-counsel to represent the appellant. ***See id.*** We also pointed out that the risks of having an attorney's "testimony being given undue weight by the factfinder was also minimized because this was a bench trial." ***Id.*** Lastly, we held that the failure to admit counsel's testimony was not harmless error because it was "valuable impeachment" testimony in a weak case. ***Id.*** at 684. Thus, under ***Gibson***, it is evident that an attorney is competent to give evidence in a case and a trial court can rely on that testimony. Appellant's claim lacks merit. ***See Gibson***, ***supra*** at 683-84.

---

failure to make a contemporaneous objection waives the issue on appeal. ***See Parr v. Ford Motor Co.***, 109 A.3d 692, 709 (Pa. Super. 2014), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 136 S.Ct. 557 (2015) (citing cases).

Appellant next claims that the trial court erred in finding that the will was valid because neither witness testified that he saw the decedent sign the will. (*See* Appellant's Brief, at 21-28). However, Appellant waived this claim.

In her petition for citation *sur appeal* from probate, Appellant raised three issues, stating that she was contesting the will "on the basis of [f]raud, [u]ndue [i]nfluence and [l]ack of [t]estamentary [c]apacity." (Petition for Citation *Sur Appeal* from Probate, 8/12/15, at 2; *see* N.T. Trial, 10/24/16, at 30). Appellant did not challenge the will on the basis that the signing was not properly witnessed. At trial, Appellant withdrew the fraud claim and went forward only on lack of testamentary capacity and undue influence. (*See* N.T. Trial, 10/24/16, at 31). We have consistently held that issues raised for the first time on appeal are waived. *See Erie Ins. Exchange v. Bristol*, 174 A.3d 578, 590 (Pa. 2017), *appeal granted*, 134 A.3d 51 (Pa. 2016); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, we find that Appellant waived this issue for this reason as well.[8]

---

[8] In any event, the record does not support Appellant's contention. At trial, Mr. Robert Pinkos, First Deputy of the Chester County Register of Wills presented copies of Dr. Ceraoli's and Mr. Wyler's affidavits of non-appearing witnesses, which stated that each was present when the decedent signed the will. (N.T. Trial, 10/24/16, at 36-38). Mr. Pinkos testified that the will had been filed with the register of wills and admitted to probate. (*See id.*). Appellant did not object to Mr. Pinkos' testimony or to the admission into evidence of the affidavits. (*See id.* at 44, 54). Counsel admitted that Appellee had established that the will was probated. (*See id.*). Moreover, at trial, Dr.

In her final claim, Appellant contends that the trial court erred in finding that she had not met her burden of proving undue influence. (**See** Appellant's Brief, at 8-9). However, Appellant does not discuss this claim within her argument. (**See id.** at 11-28). Therefore, we find the claim waived. **See Commonwealth v. Jones**, 815 A.2d 598, 604 n.3 (Pa. 2002) (claims raised in the Statement of Questions Involved but not pursued in the body of the brief are waived).

Accordingly, for the reasons discussed above, we find Appellant's claims are both waived and lacking in merit. Therefore we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/18

---

Cerasoli and Attorney Wyler both testified, without contradiction, that they had witnessed the decedent sign the will. (**See id.** at 123-25, 140-41). Thus, even if Appellant had not waived her claim, it has no basis in fact.