**In re APRIL 1977 GRAND JURY SUBPOENAS.**

**GENERAL MOTORS CORPORATION, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 77–1599.**

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1978.

Decided Sept. 7, 1978.

---

Edwards, Circuit Judge, with whom Lively, Circuit Judge, joined, filed a concurring opinion.

Celebrezze and Weick, Circuit Judges, filed separate dissenting opinions.

George J. Moscarino, Hugh Calkins, Robert C. Kahrl, Paul M. Pohl, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Julius L. Russu, Otis M. Smith, General Motors Corp., Detroit, Mich., for appellant.

James K. Robinson, U. S. Atty., Detroit, Mich., Willard C. McBride, M. Carr Ferguson, Asst. Atty. Gen., Ernest J. Brown, Robert E. Lindsay, Charles E. Brookhart, James A. Bruton, Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before PHILLIPS, Chief Judge, WEICK, EDWARDS, CELEBREZZE, LIVELY, ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.*

MERRITT, Circuit Judge.

General Motors appeals under the Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b) (1970), from an interlocutory order of the District Court refusing to disqualify a government lawyer from participation in grand jury proceedings. We hold that the original certification of this appeal under § 1292(b) by a panel of this Court was improvidently granted, and we therefore dismiss the appeal.

## I. STATEMENT OF THE CASE

In February, 1977, the Department of Justice approved the convening of a special federal grand jury in Detroit to investigate possible criminal tax violations by General Motors. On April 15, 1977, the Attorney General appointed an Internal Revenue Service lawyer to assist Justice Department lawyers in conducting the grand jury in-

---

* The Honorable John W. Peck heard oral argument and participated in conference consideration of the case, but he became Senior Judge on July 1, 1978, and withdrew from further consideration of the case at that time. *See* 28 U.S.C. § 46 (1970) and Rule 35, Federal Rules of Appellate Procedure.

The Honorable Damon J. Keith recused himself and did not participate in consideration of the case.

quiry. General Motors moved to disqualify the IRS lawyer from participation in the grand jury proceedings on the grounds that public policy considerations and conflict-of-interest principles of the legal profession prohibit such participation by IRS lawyers who have previously participated in a civil tax investigation of the taxpayer.

Finding that the Attorney General's action is specifically authorized by statute, 28 U.S.C. §§ 515, 543 (1970), the District Judge overruled General Motors' motion to disqualify but certified the issue to us under the Interlocutory Appeals Act of 1958, as a "controlling question"—apparently on the ground that, if the District Court's ruling were later found to be erroneous, he presence of an IRS lawyer in the grand jury room might void any indictment returned by the grand jury against General Motors or its officials. General Motors pursued its appeal to this Court under the Interlocutory Appeals Act, and it also appealed under 28 U.S.C. § 1291 (1970), treating the order as a "final decision" for the purposes of review.

The government then moved to dismiss both appeals, the § 1291 appeal on the grounds that the lower court order overruling General Motors' motion to disqualify was interlocutory and not final, and the § 1292(b) interlocutory appeal on the grounds that such piecemeal appeals are not allowed in criminal cases. Without oral argument or conference consideration, an administrative panel of this Court, consisting of Judges Weick, Edwards and Celebrezze, entered an order on October 3, 1977, dismissing General Motors' § 1291 appeal (No. 77–1508) but granting General Motors leave to proceed under § 1292(b). A different panel of this Court, consisting of Judges Weick, Celebrezze and Merritt, then heard the § 1292(b) appeal on the merits and filed an opinion dated April 5, 1978, reported at

573 F.2d 936, holding that this court has appellate jurisdiction and that the IRS lawyer should be barred from the grand jury proceedings. Judge Merritt dissented. On motion by the government, we vacated the panel opinion and ordered rehearing *en banc* under Rule 35 of the Federal Rules of Appellate Procedure and the Rules of this Court.[1]

## II. THE ISSUE OF APPELLATE JURISDICTION

██ The District Court's order is not reviewable under the Interlocutory Appeals Act of 1958.[2] The Act authorizes an appeal from an interim or non-final decision "in a civil action" upon a certification by the District Judge that his decision raises a "controlling question of law as to which there is substantial ground for difference of opinion," and that resolution of the issue "may materially advance the ultimate termination of the litigation." The statute in question establishes the right of interlocutory appeal in *civil* cases, but it extinguishes that right in *criminal* cases and in other matters which may not be properly characterized as "civil actions." From a simple reading of the statute itself, it seems self-evident that a grand jury investigation of possible criminal tax violations should not be characterized as a "civil action" under § 1292(b) and that we lack jurisdiction under the Interlocutory Appeals Act.

This conclusion is based not simply on a mechanical application of the terms "civil" or "criminal" to the proceedings below but rests also on an established line of precedent disapproving appellate interruption of the grand jury's investigation. In *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court held that a district court's refusal to quash a grand jury subpoena was not appealable

---

1. "The effect of the granting of a hearing *en banc* shall be to vacate the previous opinion and judgment of this court, to stay the mandate and to restore the case on the docket as a pending appeal." Rule 14(a), *Rules of the United States Court of Appeals for the Sixth Circuit.*

2. General Motors argues in the alternative that we should assert appellate jurisdiction by treating this appeal as a petition for writ of mandamus under 28 U.S.C. § 1361 or § 1651 (1970). The Court does not reach or decide this question because General Motors has not applied for a writ of mandamus in this proceeding, and

as a final order under § 1291. In an opinion suggesting that a grand jury proceeding is part of the criminal process, Justice Frankfurter, writing for the Court, recognized the historic principle of judicial administration "forbidding piecemeal disposition" and "separate review of the component elements" of criminal cases. 309 U.S. at 325, 60 S.Ct. at 541. The principle is designed to conserve judicial time and prevent delaying tactics in criminal proceedings. Justice Frankfurter pointed out that the fifth amendment makes the grand jury a necessary part of the criminal process and explained that "[i]t is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found." *Id.* at 327, 60 S.Ct. at 542.

In *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), the Supreme Court recently reaffirmed the holding of *Cobbledick* and the principles on which it is based, observing that a contempt citation for disobeying the subpoena is the only way to obtain review of such a grand jury question in advance of indictment and trial:

> [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. 402 U.S. at 532–33, 91 S.Ct. at 1582.

■ General Motors has available the same appellate remedies recognized in

*Ryan.* It can raise the disqualification of counsel issue after indictment and conviction, the normal course of review in such cases, or it can refuse to obey grand jury subpoenas on this ground and appeal a contempt citation. These are the usual remedies, and they are adequate.

Justice Frankfurter in *Cobbledick* and Justice Brennan in *Ryan* applied these principles of appellate review in order to prevent interlocutory appeals from grand jury activity under § 1291. The Interlocutory Appeals Act, passed eighteen years after the *Cobbledick* decision, is based on these same principles forbidding piecemeal review of such cases. The Act limits interim review of "a controlling question of law" to *civil* cases only and, therefore, should not be read to allow interlocutory review of grand jury proceedings.

Even if this appeal could be characterized as an appeal in a "civil action" within the meaning of § 1292(b), we would exercise our statutory discretion by dismissing this appeal since we do not believe that resolution of this issue at this time would "materially advance the ultimate termination of the litigation." The legislative history of the Interlocutory Appeals Act suggests that interlocutory appeals, even in civil cases, should be "sparingly granted."[3] To allow an appeal when the District Court has refused to disqualify a government lawyer from a grand jury investigation simply disrupts the investigation and creates the possibility that the target of the inquiry—by the threat of delay and protracted legal maneuvering—will exert unwarranted influence in the government's choice of its prosecuting attorney.

■ General Motors also argues in the alternative that the District Court's order allowing the former IRS lawyer to partici-

---

the District Judge has not received notice or had an opportunity to be heard and thus has not been made a litigant on this appeal. For discussion of appellate procedure in mandamus actions, see generally Rule 21, *Federal Rules of Appellate Procedure; Will v. Calvert Fire Ins. Co.,* —— U.S. ——, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Note,

*Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv.L.Rev. 595 (1973).

3. *See* Judge Maris' discussion of the legislative history in *Milbert v. Bison Laboratories,* 260 F.2d 431, 433 (3rd Cir. 1958) (*en banc*). *See also Kraus v. Bd. of County Comm'rs,* 364 F.2d 919, 922 (6th Cir. 1966) (invoking "exceptional case" standard as criterion to be met under

pate in grand jury proceedings is a "final decision" within the meaning of 28 U.S.C. § 1291 and therefore is appealable as a matter of right. As previously noted, an administrative panel of this Court, consisting of Judges Weick, Edwards and Celebrezze, dismissed General Motors' § 1291 appeal in the same order that certified the § 1292(b) appeal. General Motors did not appeal that dismissal but, as a matter of fairness, we reach the question of appealability under § 1291, since we have not accepted General Motors' appeal under § 1292(b).

In the *Cobbledick* and *Ryan* cases, discussed above, both of which were brought under § 1291, the Supreme Court held that District Court orders controlling the issuance of grand jury subpoenas are not final decisions for the purposes of appeal. For the reasons we have already set forth, we believe that the holding and the principles applied in these two cases preclude General Motors' appeal under § 1291 here. We note also that the Supreme Court recently reaffirmed these principles in *Coopers & Lybrand v. Livesay*, — U.S. —, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), holding that a district court's determination that a lawsuit may not be maintained as a class action is not appealable as a final decision under § 1291. The Court based its decision in part on the factors of "potential waste" and delay discussed in the *Cobbledick* decision, and quoted approvingly the following excerpt from Justice Frankfurter's opinion in *Cobbledick*:

> Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the

harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leadenfooted. Its momentum would be arrested by permitting separate review of the component elements in a unified cause. 309 U.S. at 325, 60 S.Ct. at 541.

The Supreme Court repeated the principle disfavoring interlocutory appeals in criminal cases under § 1291 in another decision last term, *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). In a unanimous opinion, the Court held that a criminal defendant may not appeal, before trial, an order denying his motion to dismiss on speedy trial grounds. Again quoting language from the *Cobbledick* opinion, the Court observed that "the rule of finality has particular force in criminal prosecutions because 'encouragement of delay is fatal to the vindication of the criminal law.'" *Id.* at 1549, *quoting* 309 U.S. at 325, 60 S.Ct. 540. The Court noted that it had deviated from this settled principle in a limited category of criminal cases, such as bail review and double jeopardy cases, which "involve an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." 98 S.Ct. at 1552.

As previously discussed, General Motors can raise the disqualification of counsel issue after indictment and conviction or on appeal from a contempt citation. It is not an issue which is "destroyed" if not "vindicated before trial." In addition, if no indictment is returned but General Motors believes that the government has improperly used the grand jury to obtain evidence for civil law enforcement purposes, it can raise that question by various motions in the civil action, including a motion to suppress the evidence or a motion to dismiss the complaint. These remedies are ade-

§ 1292(b)); Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 626–27 (1975). ("[B]ecause the Act is premised on a notion that there

should be case-by-case evaluation of efficiency, any universal standard restricting certification seems out of place.")

quate, and, unlike this appeal, they do not "arrest the momentum of judicial administration" or "encourage delay."

Accordingly, the appeal is dismissed as improvidently granted under 28 U.S.C. § 1292(b).

EDWARDS, Circuit Judge, with whom LIVELY, Circuit Judge, joins, concurring. I join Judge Merritt's opinion dismissing this appeal.

This court has reviewed the record of the grand jury proceedings which was fully developed in the District Court. I conclude after that review that we should now dismiss the appeal for which a panel (of which I was a member) granted leave under 28 U.S.C. § 1292(b) (1970). This decision represents a judgment that, on the facts developed, we lack appellate jurisdiction of the case and, hence, as my colleagues in the majority conclude, response to the argument on the merits advanced in the dissent would not be called for.

I feel, however, that if in fact a prosecutorial conflict of interest constituting abuse of the grand jury process were shown in the record below, this court could properly consider the case under the all writs statute, 28 U.S.C. § 1651 (1970), as a petition for writ of mandamus. *See Schlagenhauf v. Holder,* 379 U.S. 104, 109–12, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *United States v. United States District Court,* 407 U.S. 297, 301 n. 3, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Comment, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts,* 45 U.Chi.L.Rev. 450, 476–80 (1978). *See also Will v. Calvert Fire Ins. Co.,* —— U.S. ——, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). Thus, I not only join the opinion of the court in dismissing the appeal, but also consider and reject mandamus as inappropriate on the facts shown in this record.

There is no inherent conflict of interest in the appointment of a federal attorney assigned to the Internal Revenue Service to assist in or conduct a criminal tax investigation through grand jury proceedings. Further, the record made in the District Court shows no abuse of the grand jury process.

The interest of the United States in collection of income taxes is represented both by statutorily authorized civil tax collection proceedings, *see* 26 U.S.C. §§ 7401–7408 (1976) and (in appropriate cases) criminal fraud prosecutions, *see id.* §§ 7201–7216. These functions are not in conflict and, on the contrary, the latter supplements the former. In a very recent case this principle has been recognized by the Supreme Court. *United States v. LaSalle National Bank,* —— U.S. ——, —— — —— n. 12, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). On this point the *LaSalle* Court appears to be unanimous. *See id.* at —— & n.2, 98 S.Ct. 2369 (Stewart, J., dissenting).

Congress has specifically authorized the appointment by the Attorney General of special assistants to "conduct any kind of legal proceeding, . . . . including grand jury proceedings . . . ." 28 U.S.C. § 515 (1970). This statute requires that each such special assistant "shall take the oath required by law" of assistants to the Attorney General. This was done.

As found by the panel majority in this case (prior to this *en banc* hearing):

Nothing precluding such an appointment is found in the Federal Rules of Criminal Procedure. Rule 6(d) of Fed.R. Crim.P. provides that "attorneys for the government" may be present during grand jury sessions. Rule 54(c) defines attorneys for the government as including "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney . . . ."

*In re April 1977 Grand Jury Subpoenas,* 573 F.2d 936, 941 (6th Cir. 1978) (panel opinion).

Thus this record shows that Special Assistant United States Attorney General Piliaris has been properly designated to perform his grand jury assignment. There are no findings before this court to indicate

that he has done anything except demonstrate a zealous interest in collecting federal taxes for a single client—the United States. This clearly has not increased his popularity with the taxpayer, but it does not reflect any lack of legal ethics.

The possible abuse of petitioner General Motors' interests which might arguably develop from the instant investigation can result only if there proves to be no probable cause for grand jury criminal indictment and there is proof that the government in bad faith undertook to employ a grand jury purely for purposes of civil tax investigation. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 683–84, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Here the District Judge found that there had been no such proof.[1] There is nothing to indicate that his finding is clearly erroneous.

Further, the District Judge granted General Motors' motion for a protective order specifically guarding against such abuse.[2]

General Motors has a complete remedy in objecting to any evidence being submitted in any subsequent civil tax case which was

derived from bad faith employment of the grand jury and in appeal from any judgment rendered against it. The District Court and this court would be particularly alert to such a showing.

In short, we should deny mandamus because this record demonstrates no "exceptional condition," no "clear abuse of judicial discretion" or failure to exercise jurisdiction on the part of the District Judge and no denial of appellate review. *Schlagenhauf v. Holder, supra; LaBuy v. Howes Leather Co., supra; United States v. United States District Court, supra.*

We note that the Fourth Circuit has just decided a case which is in very close agreement with this opinion. *In re Grand Jury Subpoenas, April, 1978,* 581 F.2d 1103 (4th Cir. 1978).

The overriding consideration in the present proceeding is, as the majority opinion holds, that grand jury proceedings (the primary criminal investigative tool available to the United States) not be subject to piecemeal appeals and inordinate delays. *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940).

---

1. The District Judge found:
   Whatever the motivation there is no evidence that the Justice Department in this case plans or intends to use the grand jury subpoenas to gather evidence not relating to its criminal investigation.

2. The District Judge's oral opinion said:
   Specifically the Court determines that attorneys for the government may not disclose matters occurring before the grand jury to agency personnel except for technical assistance and then only as specifically authorized by the Court.
   The District Judge's protective order provided:
   This protective order applies with respect to the grand jury investigation of General Motors Corporation and others referred to in the pleadings and briefs in the above-entitled matter.
   Except as authorized by this order or as authorized by other written orders of the Court, Attorneys for the Government shall not disclose matters occurring before the grand jury to persons other than jurors, interpreters, stenographers, operators of recording devices, typists, and other attorneys for the government.
   The Court is concerned with substance, not form. Applications for specific authoriza-

tion, the procedure with respect thereto and the Court's action thereon, shall be in a manner substantially consistent with the Court's oral opinion of June 28, 1977.
   Attorneys for the Government shall not disclose matters occurring before the grand jury, or summaries thereof, to Internal Revenue Service personnel for the purpose of seeking advice or recommendations with respect to seeking indictments; and if Attorneys for the Government shall apply to the Court for an order authorizing disclosure to persons who are or have been employed by Internal Revenue Service, it shall be an implied representation that Attorneys for the Government will not seek or receive advice or recommendations from such persons with respect to what indictments, if any, to seek, and Attorneys for the Government shall not seek or receive advice or recommendations with respect thereto from such persons.
   Attorneys for the Government are hereby authorized to make limited disclosure, as necessary, to persons for scientific analysis, advice, or opinion provided that such persons are not and have not been employed by Internal Revenue Service.

It would be particularly inappropriate if in this and other cases, the target of a grand jury investigation could delay pursuit of crime while it disputed the Attorney General's choice of the lawyer he deemed best fitted to carry on the government's investigation.

Judge Lively has authorized me to say that he joins this concurring opinion.

CELEBREZZE, Circuit Judge, dissenting.

I believe that this Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1292(b) and that it should exercise its discretion and do so. The Third Circuit has apparently approved this result, *In re Grand Jury Impaneled Jan. 21, 1975*, 541 F.2d 373 (3d Cir. 1976); *see also In re Grand Jury Investigation*, 338 F.Supp. 1379 (W.D. Pa.1972), and the majority cites no cases on point holding to the contrary.

The majority's assertion that this case does not involve a "civil action" squarely contradicts language in both *United States v. Neiberger*, 460 F.2d 290, 292 (6th Cir. 1972), and *United States v. Calandra*, 455 F.2d 750, 752–53 (6th Cir. 1972). The majority, curiously, does not mention *Neiberger* or *Calandra*, apparently seeking to overrule them *sub silentio*.[1]

The majority's concern with piecemeal appeals in the grand jury context is well founded, but it overreacts to this concern. There are two safeguards built into § 1292(b) which would sift out almost all interlocutory appeals like this one stemming from grand jury proceedings. First, there is the required certification by the district court and, second, there is the discretion given to the court of appeals to decide whether to hear such appeals. These safeguards would protect against interlocutory appeals in the grand jury context, save for the extraordinary case. I believe that this is an extraordinary case and that the

prior panel did not act improvidently in exercising its discretion to hear the appeal.

I respectfully dissent.

WEICK, Circuit Judge, dissenting.

This is one of the most important cases ever to be presented to an appellate court for review. It involves grand jury abuse where the constitutional right to due process of law of citizens being investigated, is alleged to have been flagrantly violated by an unlawful practice. The unlawful practice is that of appointing as Special Attorney to conduct the grand jury investigation, one who is an attorney for, and is on the payroll of, an aggrieved Government agency, and which agency in reality is the victim of an alleged fraud. Persons being investigated by a grand jury are presumed to be innocent, and a properly appointed Special Attorney owes a duty to protect them from unfounded prosecution.

A panel of this Court, in an opinion reported in 573 F.2d 936 (6th Cir. 1978), held that the attorney for the aggrieved agency (who was on the agency's payroll) had a conflict of interest, or an appearance of a conflict of interest, and was disqualified from acting as a Special Attorney to conduct a grand jury investigation of activities in which the agency or its employees were involved. The panel reversed the judgment of the District Court which had denied General Motor's motion to disqualify the attorney.

I

A grand jury is an arm of the court and is subject to its supervision and control. Ample power to investigate, to correct, and to put a stop to, grand jury abuse is vested in Judicial Councils, 28 U.S.C. § 332(d), and the Judicial Conference of the United States, 28 U.S.C. § 331. Appellate Courts have power to rule on these abuses on di-

---

1. The majority's mechanical interpretation of the phrase "civil action" goes too far. In another context, the Supreme Court has refused to find a "civil" or "criminal" label dispositive but has instead focused upon underlying policy considerations in deciding the propriety of federal abstention from interference with state court proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

rect appeal, 28 U.S.C. § 1291, on interlocutory appeal, 28 U.S.C. § 1292(b), and under the All Writs Act, 28 U.S.C. § 1651.

Despite all this authority the en banc majority has declined to exercise its rightful jurisdiction, and by its reasoning, which is believed to be specious, has dismissed GM's appeal for lack of jurisdiction. As Judge Celebrezze points out in his dissent, the majority cites no cases on point in support of its position.

It cannot be seriously controverted that many abuses now exist in grand jury functions, which cry out for reform. They are detailed in an article appearing in the American Bar Association Journal, March, 1978, Vol. 64, page 337, a copy of which is appended hereto. The Association has endorsed a comprehensive set of proposals for grand jury reform. Curiously enough, one of the proposed reforms states: "A prosecutor would not be allowed to use the grand jury to assist in an administrative inquiry . . . ." *Id.* at 338.

In the present case the grand jury is not only *being used to assist in the administrative inquiry,* but also the Special Attorney conducting the grand jury investigation is the attorney for, and is on the payroll of, the aggrieved agency, and the one who recommended the grand jury investigation.[1]

The IRS already had ample statutory authority to conduct its own investigation, and it did not need the grand jury. 26 U.S.C. § 7601 *et seq.*

It also appears from the ABA article that Congress has been looking into grand jury abuse since 1973, and that both Senate and House Committees have conducted extensive hearings. It is stated that "many provisions in the pending legislation mirror proposals contained in the Association-approved package."

The activities of Congress, of the ABA, and of other organizations, for grand jury

reform, might not have been necessary if the judiciary had performed its rightful function. We should not abdicate our own responsibilities to correct grand jury abuse.

As Mr. Justice Brennan well stated in his dissent in *Kremens v. Bartley,* 431 U.S. 119, 137, 97 S.Ct. 1709, 1719, 52 L.Ed.2d 184 (1977):

As was true three Terms ago with respect to another sensitive case brought to this court, I can "find no justification for the Court's straining to rid itself of this dispute." *DeFunis v. Odegaard,* 416 U.S. 312, 349 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974) (Brennan, J., dissenting). "Although the Court should, of course, avoid unnecessary decisions of constitutional questions, we should not transform principles of avoidance of constitutional decisions into devices for sidestepping resolution of difficult case." *Id.* at 350 [94 S.Ct. 1704].

The District Judge realized fully the gravity of this matter. It was evidenced in an exchange which took place between Government counsel and the Judge, and is illuminating:

THE COURT: Why can't you take any Internal Revenue Service lawyer and make him a special attorney by appointment and turn the grand jury investigation over to him, let him run the whole show?

MR. McBRIDE: Conceivably that could be done.

THE COURT: You are saying that would be appropriate?

MR. McBRIDE: Yes, your Honor, for this reason—

THE COURT: I ought not be concerned with it?

MR. McBRIDE: Again for this reason that the law, Section 515 and 543 of Title 28, does not put any limits on the authority of the attorney general. It puts him in control and GM, nor the Court, if I

---

1. GM had filed with the IRS affidavits detailing abuses and misconduct of IRS agents in visiting various GM plants and insulting its employees. GM alleges that the IRS never investigated these charges, but was using these same agents to testify before the grand jury and presumably they would be examined by the IRS attorney conducting the grand jury investigation.

may be forgiven to say, so are not, I think, in a position, and GM should not be able to dictate who it will have conducting this grand jury or to assist in the conduct of this grand jury as it has also been trying to dictate who would be persons to assist the government attorneys and suggesting that we have other people. [A. 261–62]

The panel majority answered the Government's contention as follows:

As we have held, the power of appointment resides in the Attorney General or in his designated assistant. This power of appointment does not authorize the Attorney General, or his associate, to appoint an attorney who has a conflict of interest or an appearance of a conflict, nor does it immunize such an appointment so as to prevent judicial review. The courts have jurisdiction in a proper case to decide whether such conflict or appearance of conflict exists. (573 F.2d at 943)

In authorizing the interlocutory appeal the District Court certified:

The undersigned is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this order as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of this litigation.

GM filed in this Court a notice of appeal under 28 U.S.C. § 1291, which was docketed as a direct appeal (No. 77–1508), and a petition for leave to appeal under 28 U.S.C. § 1292(b). The Government filed a motion to dismiss the direct appeal. An administrative panel of this Court, consisting of Judges Weick, Edwards and Celebrezze, granted the Government's motion to dismiss the direct appeal. By the same order that panel allowed interlocutory appeal. It should not be necessary for GM to have two appeals pending here from the same order.[2]

The administrative panel probably should have deferred action on the motion to dismiss. It certainly could not foresee that an en banc court would undertake to vacate its grant of permission to appeal and hold that such permission had been improvidently granted after the case had been heard and decided on its merits by the regular panel to whom the appeal had been assigned.

Section 1292(b) permits an interlocutory appeal in a civil action. The ground for the Government's motion to dismiss was that a grand jury proceeding is not a civil action. The Government did not claim that the interlocutory appeal had been improvidently granted. The Government cites no authority holding that a grand jury proceeding is a criminal action. As Judge Celebrezze points out in his dissent, our Court has previously spoken twice on this important issue. *United States v. Neiberger,* 460

---

**2.** It is astounding that the majority would endeavor to denigrate the panel's order by the statement:

Without oral argument or conference consideration, an administrative panel of said Court consisting of Judges Weick, Edwards and Celebrezze, entered an order on October 3, 1977 dismissing General Motors' § 1291 appeal (No. 77–1508) but granting General Motors *leave to proceed* under § 1292(b). [Italics mine].

It was *leave to appeal* which was granted.

The inference to be drawn from this statement is that the action of the panel did not receive adequate consideration. If the practice of not allowing oral arguments on motions is "not adequate," the fact is that the members of the en banc majority are equally responsible for adopting such a practice, or at least for

permitting it to exist. The truth is, however, that the practice of not allowing oral argument on motions is prevalent in all of the Circuits, and even in the Supreme Court. We do not even allow oral arguments in all cases and in some Circuits many cases are decided on briefs.

As to conference consideration, this frequently occurs when the Court is in session. If no conference is held the Judges communicate by memos, or letters, which are sufficient.

As to the statement in the majority opinion that the Government filed a motion to vacate the panel opinion, I have not seen any such motion, and do not believe that a motion was filed. The Government did file a *petition for rehearing en banc,* which is governed by our Rule 3(b).

F.2d 290, 292 (6th Cir. 1972); *United States v. Calandra,* 455 F.2d 750, 752–53 (6th Cir. 1972), *rev'd on other grounds,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

In *Neiberger* we allowed the Government to appeal under § 1291 from an order of the District Court denying its application for a grant of immunity to grand jury witnesses. We stated:

> This is a final decision in a civil action and, hence, subject to appeal to this court.

*Calandra* also involved an appeal under § 1291 by the Government from an order entered in a grand jury proceeding.[3]

Neither *Calandra* nor *Neiberger,* as Judge Celebrezze points out, are mentioned in the majority opinion, and are being overruled *sub silentio.*

A grand jury proceeding does not become criminal as to a defendant until the grand jury returns an indictment against the defendant. As well stated in *Post v. United States,* 161 U.S. 583, 587, 16 S.Ct. 611, 613, 40 L.Ed.2d 816 (1896):

> Criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at least, by complaint before a magistrate.

*See also Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed.2d 950 (1918).

The majority (in our case) states:

> Even if this appeal could be characterized as an appeal in a "civil action" within the meaning of § 1292(b), we would exercise our statutory discretion by dismissing this appeal since we do not believe that resolution of this issue at this time would "materially advance the ultimate termination of the litigation." The legislative history of the Interlocutory Appeals Act suggests that interlocutory appeals, even in civil cases, should be "sparingly granted." To allow an appeal

when the District Court has refused to disqualify a government lawyer from a grand jury investigation simply disrupts the investigation and creates the possibility that the target of the inquiry—by the threat of delay and protracted legal maneuvering—will exert unwarranted influence in the government's choice of its prosecuting attorney.

The majority overlooks the fact that an Administrative Panel of this Court had previously exercised its statutory discretion in allowing the interlocutory appeal after it had been duly certified by the same District Judge who had denied GM's motion to disqualify the IRS attorney. GM in reliance on the order allowing its interlocutory appeal, filed in this Court the record on appeal and its briefs and appendices. The appeal was assigned for hearing before a regularly constituted panel of this Court. The appeal was argued orally by counsel on both sides and submitted to the Court. The Court after consideration, decided the case on its merits and reversed the judgment of the District Court for error in denying GM's motion to disqualify the IRS attorney. It would appear to be unseemly for the en banc majority at this late date to undertake to re-examine the decision of the Administrative Panel (which had been entrusted by this Court with the power to hear and determine such matters) after the case had been heard and decided by the hearing panel on its merits.

Judge Gibbons has well stated the rule with respect to discretion in *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3rd Cir. 1974), at 756:

> The key consideration is not whether the order involves the exercise of discretion, but whether it truly implicates the policies favoring interlocutory appeal. The determination of what orders are properly reviewable under § 1292(b) must be made by a practical application of those policies, not by a mechanical application

---

**3.** In other cases the Government was successful in maintaining that a grand jury proceeding is a civil action. *See, e. g., United States v. Judson,* 322 F.2d 460 (9th Cir. 1963); *United* *States v. Doe (Gravel),* 455 F.2d 753 (1st Cir.), *vacated on other grounds,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

of labels such as "discretionary" or "non-discretionary." Those policies, both before and since the enactment of § 1292(b) have included the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense. In this case, as subsequent discussion will disclose, there exists by virtue of the order appealed from both the possibility of prejudice to a party pendente lite and the possibility of considerable avoidable wasted trial time and litigation expense.

To the same effect, see *Melamed v. ITT Continental Baking Co.*, 534 F.2d 82, 84 (6th Cir. 1976).

It is also unfair to GM which undoubtedly relied on the order of the Administrative Panel granting leave to file its interlocutory appeal and dismissing its direct appeal. Had GM known that its interlocutory appeal would ever be dismissed by an en banc court because improvidently granted by the Administrative Panel, it would certainly have petitioned the Supreme Court for a writ of certiorari to review the order of the Administrative Panel dismissing its direct appeal. It ought not be necessary for GM to have two appeals pending to review a single order of the District Court. GM should not be prejudiced by unprecedented maneuvers of this Court.

It has not been the practice of this Court to treat orders allowing appeals made by Administrative Panels in the manner which was inflicted on GM in the present case. In *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444 (6th Cir. 1974), this Court in an opinion written by Circuit Judge McCree decided the merits of an interlocutory appeal in a F.E.L.A. suit for damages after an Administrative Panel of this Court had allowed the appeal. Judge McCree pointed out, however, for the benefit of District Courts and litigants that this particular use should not be made of the statute. *Caldwell* was cited in 16 Wright-Miller-Cooper-Gressman *Federal Practice and Procedure* § 3929, at 142 (1977) and the authors state:

It does not make sense to vacate a grant of permission to appeal, however, if the appeal has been argued and the only purpose is to instruct litigants and district courts that a particular use should not be made of the statute. In such cases, the appeal should be decided, and the deterrent function can be served by a statement of future policy.

[footnote:]

Although the case was of the sort that should not give rise to an interlocutory appeal, and one judge had dissented from the grant of permission to appeal, "[n]evertheless, we have permitted the appeal, and to expedite the ultimate conclusion of this litigation, we consider the issue presented." *Caldwell v. Chesapeake & O. Ry.*, C.A. 6th, 1974, 504 F.2d 444, 447.

The majority in the present case further disagreed with the Administrative Panel when it stated its disbelief that resolution of the issue at this time would "materially advance the ultimate termination of this litigation". It may well be doubted whether there is any case in which an interlocutory appeal could more "materially advance the ultimate termination of the litigation" than in the present case. By declining to hear this appeal the majority is subjecting GM and the Government to a continuous grand jury investigation conducted by an attorney with a conflict of interest, with the attendant possibility of obtaining an invalid indictment, trial and conviction, before this issue of conflict of interest can be determined. The potential waste of time and money for both sides in such proceedings would be large. Both sides in the present case already must have expended considerable sums in GM's fruitless attempt to appeal, in which it used all known means, namely, direct and interlocutory appeals. In addition, any subsequent civil tax proceeding against GM might be invalidated because of this taint.

The allowance of the appeal to GM does not disrupt the grand jury as claimed, since the grand jury may proceed and hear other

matters referred to it. *Cf. United States v. Wilson,* 421 U.S. 309, 318, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), opinion announced by Chief Justice Burger.

Nor is there any merit in the contention of the majority that the allowance of the appeal "will exert unwarranted influence in the government's choice of its prosecuting attorney." The Government in this case has never claimed that it has the right to appoint a special attorney who has a conflict of interest, to conduct a grand jury investigation.

The contention by the majority in this case that interlocutory appeals should be "sparingly" granted has no application to the present case. The appeal was certified by the District Judge who was in charge of the grand jury and had full knowledge of the seriousness of the issues and of the necessity for their early determination. His certification was approved by the Administrative Panel and also a majority of the Panel hearing the case on its merits. In all fairness, what more should be required?

The federal judiciary should be commended for the manner in which it has handled interlocutory appeals. Applications for a few more than one hundred interlocutory appeals are made each year and only about one-half are granted. The statute has not made serious inroads into the final judgment rule. 16 Wright-Miller-Cooper-Gressman *Federal Practices and Procedure* § 3929, at 133 (1977).

If there was any question about the majority not wanting to hear this appeal, the answer is found by reading footnote 2 on pages 1368–1369 of its opinion, where the following language appears:

> General Motors argues in the alternative that we should assert appellate jurisdiction by treating this appeal as a petition for writ of mandamus under 28 U.S.C. § 1361 or § 1651. The Court does not reach or decide this question because General Motors has not applied for a writ of mandamus in this proceeding, and the District Judge has not received notice or had an opportunity to be heard and thus has not been made a litigant on this appeal.

As pointed out in the panel's opinion and the authorities there cited, it was not necessary for GM to file a mandamus action as the Court may treat the interlocutory appeal as a petition for writ of mandamus under the All Writs Act. 573 F.2d at 940. Furthermore, GM has acquiesced in the panel's treatment. The statement by the majority that the District Judge who is not a party to this appeal, has not received notice or had an opportunity to be heard, borders on the ridiculous.

The professed concern of the en banc majority for the District Judge is not understandable since the majority has discarded the District Judge's certification and dismissed the interlocutory appeal after an Administrative Panel of this Court had allowed the appeal and a regularly constituted panel assigned to hear the case had heard and decided the appeal on its merits. Such action by the majority in depriving GM of its right to appeal is not only unprecedented, it is also unbelievable.

It is further stated in the majority opinion that GM did not appeal from the order of the Administrative Panel dismissing its direct appeal. It may be properly assumed that the reason GM did not appeal from that panel's order was that it was unnecessary since the panel had granted GM leave to file an interlocutory appeal. Had GM any idea that its interlocutory appeal was going to be dismissed, it would undoubtedly have petitioned the Supreme Court for a writ of certiorari to review the dismissal of its direct appeal.

The fairness asserted by the majority in its even considering now GM's appeal under § 1291 and then denying it, relying on inapposite authorities, obviously was of no help to GM. All Courts are required to treat litigants fairly. Neither of the two cases cited by the majority as authority for again dismissing GM's direct appeal involved final orders. *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), involved only an order of the District Court

denying a motion to quash a grand jury subpoena, which clearly was not a final order. *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), likewise involved an order (not final) of the District Court denying a motion to quash a grand jury subpoena duces tecum.[4]

*Coopers & Lybrand v. Livesay,* —— U.S. ——, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), is inapposite as its holding was that denial of only the class action aspects of a case was not appealable as it is not a final order.

The decision of the majority in dismissing GM's direct appeal on the ground that the order appealed from is not a final order, conflicts with a recent decision of our Court in *Melamed v. ITT Continental Baking Co.,* 534 F.2d 82, 84 (6th Cir. 1976), before Judges Peck, Miller and McAllister, stating:[5]

Initially, we are confronted with the issue of whether the district court's order denying Continental's motion for disqualification of Winston & Strawn is appealable at this stage of the proceedings as a final decision of the district court pursuant to 28 U.S.C. § 1291. While this precise issue has not previously been before this Court, other circuits considering the question have generally concluded that an order denying a motion for disqualification is appealable under 28 U.S.C. § 1291. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (en banc) (cases cited); see *Kroungold v. Triester,* 521 F.2d 763 (3d Cir. 1975); *Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975); *Yablonski v. United Mine Workers,* 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971) (dicta), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); *Uniweld Products, Inc. v. Union Carbide Corp.,* 385 F.2d 992 (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968). *Contra, Cord*

*v. Smith,* 338 F.2d 516 (9th Cir. 1964).

In *Cord,* although an order denying a motion for disqualification was held not appealable under 28 U.S.C. § 1291, the court, treating the appeal from the order as a petition for a writ under the All Writs Act, 28 U.S.C. § 1651, stated at page 522:

Continued participation as an attorney, by one who is disqualified by a conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation. We therefore proceed to the merits.

In holding that an order denying a motion for disqualification was appealable, the court in *Silver Chrysler Plymouth, supra,* stated at page 805–06:

. . . the order is collateral to the main proceeding yet has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief. . . .

By holding such an order directly appealable, we eliminate the uncertainties (and the paperwork) attendant to resorting to § 1292(b) and/or § 1651. Since the ultimate objective is to bring before an appellate court an important question which, if unresolved, might well taint a trial, why should not this question be presented before judicial and attorney time may have been needlessly expended?

We find the reasoning of *Silver Chrysler Plymouth* to be persuasive and hold the order in this case appealable because it is a "final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration

---

4. Mr. Ryan's conviction for obstruction of justice was reversed in *United States v. Ryan,* 455 F.2d 728 (9th Cir. 1971), which case is interesting because it did involve some grand jury abuse and other abuses which are pointed out in the opinion of the Court.

5. It is not believable that the majority intended to overrule *Melamed sub silentio.*

with it." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528, 1536 (1949).

*Accord, Cleveland v. Cleveland Elec. Illuminating Co.,* 440 F.Supp. 193 (N.D.Ohio 1976), aff'd, 573 F.2d 1310 (6th Cir. 1977).

In *In re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 273, 531 F.2d 600, 605 (1976), the Court stated in footnote 8:

In the context of a trial rather than a grand jury proceeding, it has been held that an order *granting* a motion to disqualify counsel is a final judgment under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *E. g., Hull v. Celanese Corp.,* 513 F.2d 568, 570–71 (2d Cir. 1975); *Draganescu v. First Nat'l Bank,* 502 F.2d 550, 551 (5th Cir. 1974); *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1383 n. 1 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *United States v. Hankish,* 462 F.2d 316, 318 (4th Cir. 1972) (dictum); *Brown v. Miller,* 52 U.S.App.D.C. 330, 286 F. 994 (1923) (attorney himself appeals; jurisdiction assumed without discussion). In fact, although there was originally some authority for the view that orders denying a motion for disqualification were not appealable under *Cohen,* e. g., *Fleischer v. Phillips,* 264 F.2d 515, 516–17 (2d Cir.), cert. denied sub nom., *Fleischer v. Benjamin,* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); *Marco v. Dulles,* 268 F.2d 192, 193 (2d Cir. 1959), the weight of recent authority is definitely in the direction of treating the denial of such motions as final orders, e. g., *Yablonski v. UMW,* 147 U.S.App.D.C. 193, 454 F.2d 1036, 1038 & n. 9 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972) (order denying motion for disqualification appealable where the disqualification was predicated upon ethical considerations and "additionally upon significant impingement on a specific legislative policy"); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d

Cir. 1974) (en banc) (reviewing the cases); *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 270–71 (2d Cir. 1975) (*citing Silver Chrysler Plymouth, supra*); *Kroungold v. Triester,* 521 F.2d 763, 765 (3d Cir. 1975); *American Roller Co. v. Budinger,* 513 F.2d 982, 983 (3d Cir. 1975); *Greene v. Singer Co.,* 509 F.2d 750, 751 (3d Cir. 1971); *United States v. Garcia,* 517 F.2d 272, 275 (5th Cir. 1975) (criminal trial); *Uniweld Prods., Inc. v. Union Carbide Corp.,* [sic] 385 F.2d 992, 994 (5th Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968); *Tomlinson v. Florida Iron & Metal, Inc.,* 291 F.2d 333, 334 (5th Cir. 1961) (order denying motion for disqualification is final where "harm resulting therefrom is in the nature of the frustration of a public policy which cannot be avoided or mitigated by an appeal taken after the trial"); *Fullmer v. Harper,* 517 F.2d 20, 21 (10th Cir. 1975). *But see Cord v. Smith,* 338 F.2d 516, 521 (9th Cir. 1964).

We find ourselves in agreement with those cases holding that an order granting or denying a motion for disqualification is appealable, and it is our view that the factors justifying that conclusion in the trial context are equally applicable to grand jury proceedings. Indeed, even if we were to conclude that the question of appealability was closer than we think it to be, we would be disposed to take a more expansive approach to the collateral order doctrine in the grand jury context than in the trial context since allowing such appeals is less likely to involve "the mischief of economic waste and of delayed justice," *Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 124, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092 (1945). *Cf. United States v. Wilson,* 421 U.S. 309, 318, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), in which Chief Justice Burger, writing for the Court, had an opportunity to compare trials and grand jury proceedings in terms of the obstruction that would be caused by requiring Rule 42(b) criminal contempt hearings for refusal to testify: "A grand jury ordinarily deals with many inquiries and cases at one time, and it can

rather easily suspend action on any one, and turn to another while proceedings under Rule 42(b) are completed. . . . Trial courts, on the contrary, cannot be expected to dart from case to case at any time a witness who has been granted immunity decides not to answer questions."

In addition to *In re Investigation Before April 1975 Grand Jury, supra,* . two other cases have explicitly held that an order disqualifying an attorney from representing witnesses before a grand jury is appealable under the collateral order exception. These cases are: *In re Investigation Before the Feb. 1977 Lynchburg Grand Jury,* 563 F.2d 652, 655 (4th Cir. 1977), and *In re Grand Jury Empaneled Jan. 21, 1975,* 536 F.2d 1009, 1011 (3d Cir. 1976). Two other cases have entertained such appeals without discussing jurisdiction: *In re Taylor,* 567 F.2d 1183 (2d Cir. 1977), and *In re Gopman,* 531 F.2d 262 (5th Cir. 1976).

The majority refers to the rule prohibiting piecemeal appeals in criminal cases; but this is not a criminal case. Even in criminal cases piecemeal appeals have been allowed by the Supreme Court. In *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978), the Court said:

This Court in criminal cases has twice departed from the general prohibition against piecemeal appellate review [citing *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)]. In each instance, the Court relied on the final judgment rule's "collateral order" exception articulated in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545, 547, 69 S.Ct. 1221, 93 S.Ct. 1528 (1949).

By authority of *Cohen,* GM's appeal under § 1291 was proper and the Administra-tive Panel should not have dismissed it. *Melamed v. ITT Continental Baking Co., supra; In re Investigation Before 1975 Grand Jury, supra.* The en banc majority erred when it reconsidered GM's § 1291 appeal and dismissed it.

The en banc majority further contends that GM has a remedy of appeal if it is convicted of a crime and may also appeal from any unauthorized use of grand jury materials by the IRS. But this would involve protracted and very expensive litigation, both for GM and for the Government, which litigation the interlocutory appeal is designed to avoid. *Kraus v. Board of County Road Comm'rs,* 364 F.2d 919, 921 (6th Cir. 1966) (approving resolution adopted by Judicial Conference of the United States relating to interlocutory appeals). *Melamed v. ITT Continental Baking Co., supra; In re Investigation Before 1975 Grand Jury, supra.*

An appellate court has the power to review by mandamus an issue of first impression involving a basic undecided problem. *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *United States v. United States District Court,* 444 F.2d 651, 656 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Surely this is such a case.

## II.

The en banc majority did not pass upon the issue of disqualification of Mr. Piliaris, no doubt because it ruled it had no jurisdiction. Any ruling which it would make on the merits of the case would have been *obiter dicta.*[6]

It appears that the appointment of an agency attorney as a Special Attorney to conduct a grand jury investigation in a matter which the agency attorney has instigated, and in which he had been previously

---

**6.** The role of Mr. Piliaris was shown by uncontroverted evidence. The avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the possibility of wasted trial time and large litigation expense both to the party and to the Government surely satisfies all the legal requirements for an inter-locutory appeal. *Katz v. Carte Blanche Corp., supra; Melamed v. ITT Continental Baking Co., supra.*

The en banc majority should therefore exercise its rightful jurisdiction and on the uncontroverted evidence re-enter the judgment of the hearing panel.

involved, is not an isolated incident. In the panel majority opinion we cited the case of *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Tex.1977), where a similar situation existed with an attorney, formerly employed by the Civil Aeronautics Board, who had been appointed as Special Attorney to conduct a grand jury investigation concerning the very subject upon which he had previously passed while in the employ of the Board. The District Court granted defendant's motion to dismiss the indictment because of this impropriety, holding that the attorney was an unauthorized person to appear before the grand jury.

The *amicus curiae* brief filed by the law firm of Edward Bennett Williams refers to still another case involving similar facts. In that case, No. 77–CR–1073· presently pending in the United States District Court for the Northern District of Illinois, Velsicol Chemical Corporation has moved to dismiss an indictment pending against it and several of its present and past employees, on the ground that an Environmental Protection Agency (EPA) attorney, who was appointed as a Special Attorney to conduct the grand jury investigating the defendants, previously had substantial connection, as an EPA lawyer, with the matter under grand jury investigation.

If attorneys for the IRS, the Civil Aeronautics Board, and the EPA, all with conflicts of interest, may be appointed as Special Attorneys to conduct grand jury investigations, this practice can soon spread to all of the many agencies of the federal government.

SEC attorneys were recently rebuffed in their attempt to obtain disclosure of evidence developed in a grand jury investigation in which the SEC was interested. The Court held that these attorneys were not attorneys for the Government as defined in Rule 54(c) Fed.R.Crim.P. *In re Grand Jury Investigation,* 414 F.Supp. 74, 76 (S.D.N.Y. 1976).

A similar ruling was made with respect to attorneys for the Federal Trade Commission in *In re Grand Jury Proceedings,* 309 F.2d 440, 443 (3d Cir. 1962). The Court rejected the argument that the agency attorney and the Department of Justice attorney were attorneys for the same client, namely, the United States. The *amicus* brief points out:

> Different departments and agencies of the federal government represent and reflect different economic, social and political interests which are frequently in opposition.

This was the situation in the case in which Mr. Williams' firm was involved where the Secretary of Agriculture disagreed with the EPA and litigation ensued. Amicus brief, p. 10, 11.

State courts have disqualified prosecuting attorneys from trying criminal cases where they have a conflict of interest. The disqualification is based upon violation of the constitutional right of the defendant to a fair and impartial trial.

In *People v. Superior Court of Contra Costa County,* 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977), the Superior Court disqualified the prosecutor from proceeding in a murder case in which the victim's mother was employed in the office of the prosecutor. The California Supreme Court in a unanimous opinion affirming, stated:

> A fair and impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. [Citing authority].
>
> It is the obligation of the prosecutor, as well as of the court, to respect this mandate. [Citing authority]. . . . As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. [Citing authority]. (137 Cal.Rptr. at 483, 561 P.2d at 1171)

This same twofold duty had previously been announced by the Supreme Court in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Mr. Piliaris, as attorney for the IRS, was under no such duty. He never should have been ap-

pointed as Special Attorney to conduct the grand jury investigation of GM.

The California Supreme Court further stated:

We have so far examined the problem of prosecutorial impartiality largely from the perspective of the accused. Society also has an interest in both the reality and the appearance of impartiality by its prosecuting officials: "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the appearance of impropriety." (Fn. omitted.) (*People v. Rhodes* (1974) 12 Cal.3d 180, 185, 115 Cal.Rptr. 235, 239, 524 P.2d 363, 367.) Similar considerations led the American Bar Association to adopt, in its Standards Relating to the Prosecution Function, a provision that "A prosecutor should avoid the appearance or reality of a conflict of interest with respect to his official duties." (Approved Draft 1971, pt. 1, std. 1.2.)

For all the foregoing reasons we conclude that a trial judge may exercise his power to disqualify a district attorney from participating in the prosecution of a criminal charge when the judge determines that the attorney suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary functions of his office. [Footnote omitted.] (137 Cal.Rptr. at 485, 561 P.2d at 1173)

Murderers and persons with long criminal records have secured protection of their constitutional rights by the Supreme Court and other federal courts. *See, e. g., Lockett v. Ohio,* — U.S. ——, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Bell v. Ohio,* — U.S. ——, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); *United States v. Doss,* 563 F.2d 265, 282 (6th Cir. 1977) (en banc) (Weick & Engel, JJ., dissenting); *Flynt v. Leis,* 574 F.2d 874 (6th Cir. 1978), *petition for cert. filed,* 47 U.S.L.W. 3027 (U.S. Aug. 8, 1978) (No. 77–1618). (Federal District Court injunction restrained state court criminal trial of obscenity case notwithstanding provisions of 28 U.S.C. § 2283.) Wealthy persons and large corporations with millions of shareholders, such as GM, have constitutional rights which are just as dear to them, and they are equally entitled to protection of those rights from violation.

The authorities cited herein demonstrate that the en banc majority opinion not only conflicts with the settled and well-established law of the Sixth Circuit, which the majority has apparently overlooked as it is not even discussed, but its opinion is also against the great weight of authority.

The salutary doctrine of *stare decisis* ought not to be ignored.

In sum, the ruling of the majority in dismissing GM's direct appeal was clear error because the order appealed from was a final order appealable under § 1291.

The dismissal of the interlocutory appeal was error.[7]

---

7. The concurring opinion of our learned colleague Judge Edwards is curious. Although it agrees with Judge Merritt's majority opinion that this Court lacked jurisdiction, Judge Edwards states that the Court did have jurisdiction properly to consider the merits of the case under the All Writs statute, 28 U.S.C. § 1651. The trouble is, Judge Merritt did not exercise that jurisdiction and did not consider the appeal and pass upon the merits. Judge Edwards then undertakes to exercise that jurisdiction and to consider the appeal on its merits, under the All Writs Act, and determined as a matter of law that no conflict of interest was shown by the evidence, and therefore jurisdiction should not be exercised and the appeal therefore should be dismissed.

I respectfully submit that Judge Edwards' treatment of the case conflicts with Judge Merritt's opinion. If this Court really lacked jurisdiction of the appeal, Judge Edwards was without jurisdiction to pass upon the merits of the case and his rulings are pure dicta. Furthermore, if it was determined that GM's appeal failed on its merits, the judgment of the District Court should have been affirmed rather than GM's appeal dismissed for lack of jurisdiction.

The fact that the District Court granted GM's motion for a protective order is not relevant to the issue whether the IRS attorney should have

The judiciary should not shirk the performance of its responsibilities to all persons alike who are entitled to the equal protection of the law, due process of the law and a fair and impartial grand jury proceeding.

This Court should take jurisdiction and reverse the judgment of the District Court denying GM's motion to disqualify, as was ordered by the Panel that heard the case on its merits.

APPENDIX

[EXCERPTS FROM AMERICAN BAR ASSOCIATION JOURNAL—MARCH, 1978]

REMEDY FOR THE GRAND JURY: RETAIN BUT REFORM

**The Association has endorsed a comprehensive set of proposals for grand jury reform. The most controversial is permitting counsel for a witness in the grand jury room.**

### By Richard E. Gerstein and Laurie O. Robinson

Last year the press reported on charges of grand jury abuse and assertions that a grand jury's functions had been distorted to pursue illegitimate ends. Were these accusations voiced by antiwar activists, the Harrisburg Eight, or organized crime? No. They came from General Motors, and G.M. is not alone. Litton Industries, Bethlehem Steel, and the National Council of Churches, among other well-established groups, have joined the call for grand jury reform.

The grand jury needs attention. Grand jury proceedings constitute the one stage of the criminal justice process that has escaped the due process scrutiny to which other aspects of the system have been subjected during the past two decades.

Many attacks have been leveled at the grand jury in recent years. Critics charge that it has departed radically from its proper constitutional function of protecting citizens from unwarranted prosecution and has evolved into a prosecutorial tool devoid of due process. Allegations have been made that the Nixon administration used the grand jury for political, rather than law enforcement, purposes.

The American Bar Association's House of Delegates stepped into this controversy last August by overwhelmingly endorsing a comprehensive set of proposals for grand jury reform. These recommendations could change and give renewed life to the grand jury at both federal and state levels. This action has given impetus to legislation pending in the Congress. It will help to accelerate consideration of similar bills before state legislatures.

Is the grand jury obsolete? Should it be abolished? The Association has rightly opposed efforts to discard it as an anachronism. It should be retained, but with revamping to ensure fairness. The key role grand juries played during the Watergate scandal is testament to their vital part in our criminal justice system. The grand jury can perform an important function in investigating complex crimes, but the missing ingredient of adequate due process must be added.

### Fairness Needs to Be Restored

The measures endorsed by the Association can help to save the grand jury from extinction by restoring fairness while preserving its legitimate functions.

The grand jury is an institution embodied in our common law traditions. It emerged in England in the twelfth century. Scholars dispute whether it was originally a body to further the king's powers or to serve as a protective shield between citizen and crown.

been disqualified for conflict of interest, nor does it adequately protect the rights of GM.
Our citizens who are being investigated by a grand jury surely have the right to object to an attorney on the payroll of the victim of the

alleged fraud conducting the grand jury proceedings, and this injustice should be stopped by the courts as soon as the issue is presented, not delayed while the citizens are continuously subjected to this improper treatment.

Probably it served both functions, protecting citizens who were objects of governmental suspicion and providing an effective investigatory tool to ferret out criminal activity. When the colonists brought the grand jury to this country, however, it was clearly viewed as a citizen's body that could protect them from the whims of the royal governors and English tyranny. The requirement for indictment is embodied in the Constitution, thus mandating use of the grand jury to this day in all federal criminal cases.

But the institution has undergone a continuing evolution since its beginning. England abolished the grand jury in 1933. Many states have revised its functions. While no state has completely eliminated indictment as a means of initiating criminal prosecutions, a majority now allow prosecution by other routes as well. Some rarely use a grand jury, and several—Connecticut, Kansas, Michigan, Washington, and Wisconsin—have created "one-man" grand juries, granting a judicial officer many powers ordinarily associated with the grand jury.

Detractors of the grand jury and current practices claim it is an unsupervised strong arm of the prosecution. They contend that it is shielded from public scrutiny, unregulated by the courts, virtually unlimited in its subpoena powers, able to question witnesses behind closed doors, and capable of jailing recalcitrant witnesses without trial. They claim the grand jury no longer serves any protective function and that the minuscule percentage of "no bills" reflects reality: that the grand jury is only a rubber stamp for the prosecution.

The grand jury reform package adopted by the House of Delegates contains twenty-five legislative principles. These recommendations, if implemented, can restore fairness to the grand jury system. Counsel would be permitted to accompany a witness inside the grand jury room. A grand jury would not be allowed to name unindicted coconspirators or issue reports denigrating a person's normal fitness to hold office. Judicial review of grand jury reports would

be provided prior to publication, with opportunity for persons discussed to seek expungement. Transactional, not the much more limited "use," immunity would be granted. The target of a grand jury investigation would in most instances be given the opportunity to testify. A grand jury subpoena would be returnable only when the grand jury is sitting and would identify the general subject area of the investigation. All grand jury proceedings, except the jurors' deliberations, would be recorded. A prosecutor would not be allowed to use the grand jury to assist in an administrative inquiry or to obtain evidence against an already-indicted person. Witnesses would be protected against harassment, unreasonable delays, and repeated appearances. They would not be required to parade before television cameras and the public to enter the grand jury room to testify.

These reform proposals, drafted by the Section of Criminal Justice's Committee on the Grand Jury, have drawn sharp attack. Opponents argue that they will seriously weaken the grand jury and impede and impair its functions.

The fiercest debate has centered on the principle that would allow counsel into the grand jury room. Federal prosecutors—the Department of Justice and United States attorneys around the country—have asserted that this would disrupt and delay grand jury investigations.

## Opposition Arguments Are Weak

A more detailed examination of this recommendation, since it is a central thrust of the reform package, will illustrate the need for its implementation and the weakness of arguments in opposition.

It is surprising that this proposal is perceived as so radical that it prompted a personal appearance by Attorney General Griffin B. Bell to oppose it on the floor of the House of Delegates. Eleven states already allow counsel to accompany a witness before the grand jury. One of these, Michigan, is now considering broadening the practice, based on good experience with its

present provision, which allows counsel before "one-man" grand juries. Last summer Colorado passed a comprehensive grand jury reform bill with the backing of Denver district attorney Dale Tooley. Massachusetts has just passed legislation allowing counsel inside the grand jury room. New York and California are considering legislation of this nature; in California it has the support of Evelle Younger, the law enforcement minded attorney general.

The American Law Institute has supported counsel for witnesses in its Model Code of Pre-Arraignment Procedure. In the commentary to the code, the A.L.I. pointed out that "complex and important legal issues face a witness before the grand jury. An appearance before that body may subject an individual to the grave danger of self-incrimination or imprisonment for contempt. . . . The witness may also inadvertently lose his right to claim the privilege by operation of the doctrine of waiver. . . . And the inherent pressure and accompanying nervousness of a grand jury appearance upon an individual may make it very difficult for him to remember his attorney's instructions."

## Counsel Is Guaranteed

Why should a lawyer be allowed to enter the grand jury room with his client? The question would more appropriately be asked in the reverse—why not? Almost nowhere else in the criminal justice system is a person who wants a lawyer denied that right. A line of landmark cases from *Powell v. Alabama* to *Miranda, Wade, Gilbert,* and *Argersinger,* relying on requirements of the Sixth and Fourteenth amendments, have guaranteed the presence of counsel at every other critical stage of criminal proceeding.

Not having counsel present leaves a grand jury witness poorly protected. The lay witness is at a considerable disadvantage, having to make judgments even the most seasoned lawyer would find difficult. He is forced to make decisions, even while testifying, that will legally bind him. His testimony can later be used at trial to impeach him. He unwittingly can waive the privilege against self-incrimination. If he refuses to testify after receiving immunity, he subjects himself to imprisonment without trial.

## Awkward Position for Witness

Under present practice, a grand jury witness who needs to consult counsel is put in an awkward position. He must ask permission, get up, go outside the grand jury room, repeat the question to his attorney, and then return. The process is inefficient and ineffective, as well as prejudicial to the witness. It annoys grand jurors and raises speculation in their minds as to the purposes of the consultation.

Charles Ruff, the last Watergate special prosecutor, testified before a congressional committee that "the mere possibility of occasional disruption simply cannot overcome the right of the individual witness to consult his attorney without going through the mildly absurd process of leaving the grand jury room every time. Indeed," he continued, "most prosecutors would admit . . . that they count on the burden of leaving the room to dissuade the witness from asserting his right to counsel."

There is another "catch–22" in the right to counsel. The Court of Appeals for the Seventh Circuit has held that a prosecutor who grants a witness permission to leave the grand jury room to confer with counsel may later raise this fact as relevant to the perjury charges against the defendant. A dissenting judge decried the government's being "permitted to 'sandbag' him [the defendant] by using the fact that he consulted his attorney against him." *United States v. Kopel,* 552 F.2d 1265 (7th Cir. 1977).

Other courts—the Fifth Circuit, for example—have said a limit can be placed on how frequently the witness leaves the room to consult counsel. *In re Tierney,* 465 F.2d 806 (5th Cir. 1972).

Advocates of retaining the present practice assert that allowing a lawyer inside the grand jury room will disrupt its proceedings. They argue that "lawyers will law-

yer." Yet, under the Association's proposal, the lawyer's role would be stringently limited. The lawyer could only advise the client, not take part in the proceedings. The lawyer may be present only while the client is testifying. The court could order the removal of a disruptive counsel.

Attorney General Bell has asserted that "minitrials" will result if lawyers sit with their clients in the grand jury. The facts, however, speak otherwise. Practitioners, prosecutors, and judges in the states that already allow this practice report no problems. Lawyers attend many proceedings and quietly sit by and advise their clients without trying to take over the session. Mr. Bell's view reveals little faith in members of the bar. Lawyers are fully capable of restrained, professional conduct in handling these proceedings.

The attorney general also has claimed that this proposal constitutes a "Lawyers' Relief Act." This argument, while good rhetoric, is baffling: whether the lawyer is sitting outside the grand jury room door or inside beside the client, how is the number of lawyers involved changed?

Opponents raise other arguments as well. They claim that a breach in the secrecy rule will result. According to Acting Deputy Attorney General Benjamin Civiletti, letting the attorney into the grand jury room would constitute "an additional source of leaks." This argument sounds good, for who could oppose preservation of grand jury secrecy? But it is poorly based. Rule 6(e) of the Federal Rules of Criminal Procedure specifies that a witness can tell his attorney everything that occurred during his appearance. The lawyer would hear nothing that his client is not already free to tell him.

Critics also maintain that the presence of the witness's lawyer will restrict free testimony in cases involving political corruption, organized crime, and complex economic crime. But the states that already allow counsel into the grand jury chamber in most instances have retained the grand jury

as an investigatory body for precisely these kinds of investigations. There are alternate ways of securing a co-operative witness's statement. Evidence can be summarized for the grand jury in the form of hearsay, under *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). As experienced prosecutors know, very few witnesses decide to co-operate without their lawyer's knowledge. If the witness's testimony is helpful to the government, that fact will quickly become evident to the attorney from the amount of time spent in the grand jury room.

To meet one well-based concern, the Association's recommendations contain a strong statement on multiple representation of witnesses. Recognizing that problems arising from multiple representation could be exacerbated by allowing counsel into the grand jury room, the proposals contain a principle providing that a lawyer should not continue multiple representation in a grand jury proceeding if the exercise of his independent professional judgment on behalf of one of the clients will be or is likely to be adversely affected by his representation of another. If the court determines that this principle is not being followed, it would have the authority to order separate representation.

Back in the twelfth century, perhaps, or in eighteenth century America, when grand jurors were the witness's neighbors, the body traditionally served as the witness's protectors. Law was simple then and in many instances not committed to writing. Most citizens who served on a grand jury lived and died in the same community; they knew their neighbors. But today the modern investigatory grand jury is an arm of the prosecution. Laws are complex, and even the most assertive lay grand juror is to some degree intimidated by the professionalism, *expertise,* and authority of the prosecutor. It is naive to assume that grand jurors still fulfill their original role, although this is a convenient argument for defenders of the present system.

The background of the Association's grand jury reform proposals explains their sound basis and practical nature. The Criminal Justice Section's Committee on the Grand Jury, which worked for about three years on the draft, reflected the section's "umbrella" makeup. It included prosecutors, defense counsel, law professors, and judges, most of whom had extensive prosecutorial experience. The committee included Charles Ruff; one of the original Watergate prosecutors, Seymour Glanzer; and the former district attorney of Manhattan, Richard Kuh.

Prospects for congressional action on grand jury legislation appear to be improved. Congress has been looking into charges of grand jury abuse since 1973. Both House and Senate judiciary subcommittees have held extensive hearings. In the House Joshua Eilberg, Democrat of Pennsylvania, and John Conyers, Democrat of Michigan, have sponsored bills, as has James Abourezk, Democrat of South Dakota, in the Senate. The committees have received testimony from a wide spectrum of witnesses, including federal judges and prosecutors, practicing lawyers, legal scholars, and professional groups like the National District Attorneys Association. Organizations that seek broader change, such as the Coalition against Grand Jury Abuse, have also appeared. Many provisions in the pending legislation mirror proposals contained in the Association-approved package.

### Changes Being Considered

It is encouraging that many states are now considering changes in their grand jury procedures. The Department of Justice is revising the *United States Attorneys Manual* to spell out more specifically the proper limits of prosecutorial conduct. This is long overdue. During development of the Criminal Justice Section's recommendations, the Grand Jury Committee met with representatives of the Justice Department and successfully hammered out a number of compromises. At the House of Delegates' session in August, the department supported twenty of the principles as finally drafted.

During this year the Section of Criminal Justice will work closely with the Committee on Association Standards for Criminal Justice to prepare standards and back-up commentary on the grand jury.

Opponents of change fear that massive obstacles will be thrown up in the path of complex criminal investigations, making the job of law enforcement harder. But preservation of the grand jury's efficiency cannot be sufficient justification to allow it continued carte blanche with the rights of witnesses and of those it is investigating. Efficiency has never been the sole guiding procedural rule in our system.

Reform of grand jury procedures will help to retain the grand jury. It will help to restore it to its role as a citizens' body— one of the last ways in which laymen actually participate in our criminal justice system. It should serve as an aid to the prosecutor, but not as his lackey.

The grand jury is a long-standing part of our legal tradition written into our Constitution. But it is not sacrosanct. It needs the same attention every other phase of the criminal justice process has received. As a matter of fairness, we need to revamp and rejuvenate the grand jury.